No. 25-51040

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

JED WALLACE; STREET RELATIONS, INCORPORATED,

*Plaintiffs-Appellants,*

v.

BLAKE LIVELY,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the Western District of Texas, Austin Division

---

## RECORD EXCERPTS

---

Jeffrey L. Oldham
JACKSON WALKER LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (fax)

Charles Lynde Babcock
Joel Robert Glover
JACKSON WALKER LLP
1401 McKinney Street
Houston, Texas 77010
(713) 752-4200
(713) 308-4110 (fax)
cbabcock@jw.com

*Counsel for Plaintiff-Appellants*

## TABLE OF CONTENTS

**DOCUMENT**                                                                                    **TAB**

Docket Sheet (ROA.1-10) ........................................................................ 1

Notice of Appeal (ROA.4461-62) ........................................................... 2

Order Granting Motion to Dismiss (ROA.4440-60) ............................... 3

Plaintiffs' First Amended Complaint (ROA.1782-1807) .......................... 4

Certificate of Service

# Tab 1

# U.S. District Court [LIVE]
## Western District of Texas (Austin)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00163-DAE

Wallace et al v. Lively
Assigned to: Judge David A. Ezra
Cause: 28:2201 Declaratory Judgment

Date Filed: 02/04/2025
Date Terminated: 11/12/2025
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

**Plaintiff**

**Jed Wallace**                                   represented by   **Carl Christof Butzer**
Jackson Walker, LLP
2323 Ross Avenue
Suite 600
Dallas, TX 75201
214-953-5902
Email: cbutzer@jw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles L. Babcock**
Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, TX 77010
713-752-4210
Email: cbabcock@jw.com
*ATTORNEY TO BE NOTICED*

**Cody Lee Vaughn**
Jackson Walker
100 Congress Ave
Suite 1100
Austin, TX 78701
512.236.2222
Email: cvaughn@jw.com
*ATTORNEY TO BE NOTICED*

**Joel R. Glover**
Jackson Walker LLP
1401 McKinney, Suite 1900
Ste 1900
Houston, TX 77010
713-752-4226
Fax: 713-308-4114
Email: jglover@jw.com
*ATTORNEY TO BE NOTICED*

**Katharine L. Carmona**

Richards Rodriguez & Skeith, LLP
611 West 15th St.
Austin, TX 78701
512-391-8263
Email: kcarmona@rrsfirm.com
*ATTORNEY TO BE NOTICED*

**Matt Dow**
Jackson Walker, LLP
100 Congress Ave.
Suite 1100
Austin, TX 78701
(512) 236-2230
Fax: (512) 391-2113
Email: mdow@jw.com
*ATTORNEY TO BE NOTICED*

**Minoo Sobhani Sobhani Blaesche**
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
214-953-6160
Fax: 214-953-5822
Email: mblaesche@jw.com
*ATTORNEY TO BE NOTICED*

**Victoria C. Emery**
Jackson Walker, LLP
1401 McKinney St, Suite 1900
Houston, TX 77010
(713) 752-4428
Fax: (214) 953-5822
Email: temery@jw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Street Relations, Inc.                    represented by  **Carl Christof Butzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles L. Babcock**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody Lee Vaughn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel R. Glover**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katharine L. Carmona**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matt Dow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Minoo Sobhani Sobhani Blaesche**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Victoria C. Emery**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Blake Lively**                          represented by  **Laura Lee Prather**
Haynes and Boone, LLP
Texas
98 San Jacinto Boulevard
Suite 1500
Austin, TX 78701
512-867-8400
Fax: 512-867-8470
Email: laura.prather@haynesboone.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Catherine Lewis Robb**
Haynes and Boone, LLP
98 San Jacinto Boulevard
Suite 1500
Austin, TX 78701
512-867-8400
Email: catherine.robb@haynesboone.com
*ATTORNEY TO BE NOTICED*

**Michael Joseph Lambert**
Haynes and Boone, LLP
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701
512-867-8412
Email: michael.lambert@haynesboone.com
*ATTORNEY TO BE NOTICED*

**William Reid Pillifant**
Haynes and Boone, LLP
600 Congress Ave., Suite 1300
Austin, TX 78701

512-867-8436
Email: reid.pillifant@haynesboone.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/04/2025 | 1 (p.12) | COMPLAINT *of Jed Wallace et al.* ( Filing fee $ 405 receipt number ATXWDC-19749688), filed by Jed Wallace, Street Relations, Inc.. (Attachments: # 1 (p.12) Exhibit Ex. 1 (CRD Complaint), # 2 (p.130) Exhibit Ex. 2 (Precursor), # 3 (p.133) Exhibit Ex. 3 (Right to Sue Letter), # 4 (p.136) Exhibit Ex. 4 (Elle Magazine Article), # 5 (p.139) Civil Cover Sheet Civil Cover Sheet)(Vaughn, Cody) (Entered: 02/04/2025) |
| 02/04/2025 | | Case assigned to Judge David A. Ezra. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (kp) (Entered: 02/05/2025) |
| 02/04/2025 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Dustin Howell. (kp) (Entered: 02/05/2025) |
| 02/04/2025 | | DEMAND for Trial by Jury by Jed Wallace, Street Relations, Inc.. (kp) (Entered: 02/05/2025) |
| 02/05/2025 | 2 (p.130) | NOTICE of Attorney Appearance by Charles L. Babcock on behalf of Jed Wallace, Street Relations, Inc. (Babcock, Charles) (Entered: 02/05/2025) |
| 02/05/2025 | 3 (p.133) | NOTICE of Attorney Appearance by Joel R. Glover on behalf of Jed Wallace, Street Relations, Inc. (Glover, Joel) (Entered: 02/05/2025) |
| 02/05/2025 | 4 (p.136) | NOTICE of Attorney Appearance by Matt Dow on behalf of Jed Wallace, Street Relations, Inc. (Dow, Matt) (Entered: 02/05/2025) |
| 02/05/2025 | 5 (p.139) | NOTICE of Attorney Appearance by Katharine L. Carmona on behalf of Jed Wallace, Street Relations, Inc. (Carmona, Katharine) (Entered: 02/05/2025) |
| 02/05/2025 | 6 (p.142) | NOTICE of Attorney Appearance by Cody Lee Vaughn on behalf of Jed Wallace, Street Relations, Inc. (Vaughn, Cody) (Entered: 02/05/2025) |
| 02/05/2025 | 7 (p.145) | RULE 7 DISCLOSURE STATEMENT filed by Street Relations, Inc.. (Carmona, Katharine) (Entered: 02/05/2025) |
| 02/06/2025 | 8 (p.148) | REQUEST FOR ISSUANCE OF SUMMONS by Jed Wallace, Street Relations, Inc.. (Dow, Matt) (Entered: 02/06/2025) |
| 02/07/2025 | 9 (p.150) | Summons Issued as to Blake Lively. (pg) (Entered: 02/07/2025) |
| 02/10/2025 | 10 (p.152) | WAIVER OF SERVICE Returned Executed by Blake Lively as to Blake Lively. Waiver sent on 2/5/2025, answer due 4/7/2025. (Prather, Laura) (Entered: 02/10/2025) |
| 02/26/2025 | 11 (p.153) | SUMMONS Returned Executed by Jed Wallace, Street Relations, Inc.. Blake Lively served on 2/15/2025, answer due 3/10/2025. (Dow, Matt) Modified on 3/5/2025 **pursuant to 14 (p.162) Order** (cnr). (Entered: 02/26/2025) |
| 02/28/2025 | 12 (p.154) | NOTICE of Attorney Appearance by Carl Christof Butzer on behalf of Street Relations, Inc., Jed Wallace. Attorney Carl Christof Butzer added to party Street |

25-51040.4

| | | |
|---|---|---|
| | | Relations, Inc. (pty:pla), Attorney Carl Christof Butzer added to party Jed Wallace(pty:pla) (Butzer, Carl) (Entered: 02/28/2025) |
| 02/28/2025 | 13 (p.157) | Agreed MOTION to Amend/Correct 11 (p.153) Summons Returned Executed by Street Relations, Inc., Jed Wallace. (Attachments: # 1 (p.12) Proposed Order)(Dow, Matt) (Entered: 02/28/2025) |
| 03/05/2025 | 14 (p.162) | Order on Agreed Motion to Correct Docket Entry No. 11 (p.153) . Signed by Judge David A. Ezra. (cnr) (Entered: 03/05/2025) |
| 03/05/2025 | 15 (p.164) | Agreed MOTION for Extension of Time to File Answer *or Otherwise Respond to Plaintiffs' Complaint* by Blake Lively. (Attachments: # 1 (p.12) Proposed Order Granting Agreed Motion to Extend Deadline for Defendant to Respond to Plaintiffs' Complaint)(Prather, Laura) (Entered: 03/05/2025) |
| 03/06/2025 | | Text Order GRANTING 15 (p.164) Motion for Extension of Time to Answer. IT IS ORDERED that Defendant's deadline to respond to Plaintiffs' Complaint for Declaratory Judgment and Defamation is extended from March 10, 2025 to April 4, 2025. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 03/06/2025) |
| 03/06/2025 | | Reset Deadline: Blake Lively answer due 4/4/2025. (cnr) (Entered: 03/06/2025) |
| 03/27/2025 | 16 (p.168) | Unopposed MOTION for Leave to Exceed Page Limitation by Blake Lively. (Attachments: # 1 (p.12) Proposed Order Granting Unopposed Motion to File Motion in Excess of 20 Pages)(Prather, Laura) (Entered: 03/27/2025) |
| 03/28/2025 | | DEFICIENCY NOTICE to Laura Prather: re 16 (p.168) Unopposed MOTION for Leave to Exceed Page Limitation . **As of 7/28/20 when filing a motion for leave to exceed page limitations in the Austin Division, the document that exceeds the page limit must be attached to the motion. Please re-docket the motion for leave to exceed page limitations and include the document and a proposed order as attachments. The document exceeding page limits will be added to the docket by the Clerks Office if the Court grants the motion for leave** .(cnr) (Entered: 03/28/2025) |
| 04/04/2025 | 17 (p.172) | Unopposed MOTION for Leave to Exceed Page Limitation by Blake Lively. (Attachments: # 1 (p.12) Exhibit Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim, # 2 (p.130) Exhibit List, # 3 (p.133) Exhibit A - 2025.02.18 Dkt. 84 Amended Complaint, # 4 (p.136) Exhibit B - Affidavit of Kelly Murski, # 5 (p.139) Exhibit C - Affidavit of Aaron Camp in Support of Motion for Substitute Service, # 6 (p.142) Exhibit D - Street Relations Inc. Articles of Incorporation, # 7 (p.145) Exhibit E - Certificate of Conversion - Street Relations Inc - CA SOS - Feb2025, # 8 (p.148) Exhibit F - Certificate of Conversion - Street Relations Inc - TX SOS - 6Feb2025 (1), # 9 (p.150) Exhibit G - We Can Bury Anyone-Inside a Hollywood Smear Machine, New York Times, # 10 (p.152) Exhibit H - 2024.12.31 Dkt. 1 Complaint, # 11 (p.153) Exhibit I - Baldoni CA Complaint, # 12 (p.154) Exhibit J - January 23-28, 2025 emails from Bryan Freedman, # 13 (p.157) Exhibit K - Transcript of Initial Conference (2_3_25), # 14 (p.162) Exhibit L - 2025.02.04 - Notice of Nonsuit - Lively - Rule 202, # 15 (p.164) Exhibit M - 2025.03.19 Dkt. 142-1 Declaration of Jed Wallace, # 16 (p.168) Exhibit N - 2025.06.20 Dkt. 145 Memorandum of Law in Support of Lively's Motion to Dismiss, # 17 (p.172) Exhibit O - 2025.04.01 Declaration of Laura Lee Prather ISO Defendant's Motion to Dismiss, # 18 (p.976) |

| | | |
|---|---|---|
| | | Exhibit O-1 Legislative History Report and Analysis for Assembly Bill 933, # 19 (p.1776) Proposed Order Granting Motion for Leave to File Motion in Excess of 20 Pages)(Prather, Laura) (Entered: 04/04/2025) |
| 04/07/2025 | | Text Order GRANTING 17 (p.172) Motion for Leave to File Excess Pages. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 04/07/2025) |
| 04/07/2025 | 18 (p.976) | Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim Under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) by Blake Lively. (Attachments: # 1 (p.12) Exhibit List, # 2 (p.130) Exhibit A, # 3 (p.133) Exhibit B, # 4 (p.136) Exhibit C, # 5 (p.139) Exhibit D, # 6 (p.142) Exhibit E, # 7 (p.145) Exhibit F, # 8 (p.148) Exhibit G, # 9 (p.150) Exhibit H, # 10 (p.152) Exhibit I, # 11 (p.153) Exhibit J, # 12 (p.154) Exhibit K, # 13 (p.157) Exhibit L, # 14 (p.162) Exhibit M, # 15 (p.164) Exhibit N, # 16 (p.168) Exhibit O, # 17 (p.172) Exhibit O-1). (cnr) (Entered: 04/07/2025) |
| 04/18/2025 | 19 (p.1776) | NOTICE *of Plaintiffs' Local Rule CV-15* by Street Relations, Inc., Jed Wallace (Babcock, Charles) (Entered: 04/18/2025) |
| 04/24/2025 | 20 (p.1779) | NOTICE of Attorney Appearance by Minoo Sobhani Sobhani Blaesche on behalf of Street Relations, Inc., Jed Wallace. Attorney Minoo Sobhani Sobhani Blaesche added to party Street Relations, Inc. (pty:pla), Attorney Minoo Sobhani Sobhani Blaesche added to party Jed Wallace(pty:pla) (Blaesche, Minoo Sobhani) (Entered: 04/24/2025) |
| 04/25/2025 | 21 (p.1782) | AMENDED COMPLAINT against Blake Lively amending 1 (p.12) Complaint,., filed by Jed Wallace, Street Relations, Inc.. (Attachments: # 1 (p.12) Exhibit 1 - CRD Complaint, # 2 (p.130) Exhibit 2 - Draft Complaint)(Babcock, Charles) (Entered: 04/25/2025) |
| 04/28/2025 | | Text Order DENYING 18 (p.976) Motion to Dismiss. It is ORDERED that Defendant's Motion to Dismiss (Dkt. # 18) is DENIED WITHOUT PREJUDICE subject to refiling in light of Plaintiffs' First Amended Complaint (Dkt. # 21), filed on April 25, 2025. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 04/28/2025) |
| 04/28/2025 | 22 (p.1896) | NOTICE of Attorney Appearance by Victoria C. Emery on behalf of Street Relations, Inc., Jed Wallace (Emery, Victoria) (Entered: 04/28/2025) |
| 05/02/2025 | 23 (p.1899) | Unopposed MOTION for Extension of Time to File Response/Reply as to 21 (p.1782) Amended Complaint by Blake Lively. (Attachments: # 1 (p.12) Proposed Order Granting Unopposed Motion to Extend Deadline for Defendant to Respond to Plaintiffs' First Amended Complaint)(Prather, Laura) (Entered: 05/02/2025) |
| 05/05/2025 | | Text Order GRANTING 23 (p.1899) Motion for Extension of Time to File Response/Reply. IT IS ORDERED that Defendant's deadline to respond to Plaintiffs' First Amended Complaint is extended from May 9, 2025 to May 16, 2025. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 05/05/2025) |
| 05/05/2025 | | Set/Reset Deadlines: Blake Lively answer due 5/16/2025. (cnr) (Entered: 05/05/2025) |
| 05/16/2025 | | |

| | 24 (p.1902) | Unopposed MOTION for Leave to Exceed Page Limitation *of Motion to Dismiss* by Blake Lively. (Attachments: # 1 (p.12) Proposed Order Granting Unopposed Motion for Leave to File Motion in Excess of Page Limit, # 2 (p.130) Brief - Defendant's Motion to Dismiss the Amended Complaint, # 3 (p.133) Exhibit List, # 4 (p.136) Exhibit A - 2025.02.18 Dkt. 84 Amended Complaint, # 5 (p.139) Exhibit B - Street Relations Inc. Articles of Incorporation, # 6 (p.142) Exhibit C - Certificate of Conversion - Street Relations Inc - CA SOS - Feb2025, # 7 (p.145) Exhibit D - Certificate of Conversion - Street Relations Inc - TX SOS - 6Feb2025, # 8 (p.148) Exhibit E - We Can Bury Anyone-Inside a Hollywood Smear Machine, New York Times, # 9 (p.150) Exhibit F - Baldoni CA Complaint, # 10 (p.152) Exhibit G - 2024.12.31 Dkt. 1 Complaint, # 11 (p.153) Exhibit H - Affidavit of Kelly Murski, # 12 (p.154) Exhibit I - Affidavit of Aaron Camp in Support of Motion for Substitute Service, # 13 (p.157) Exhibit J - January 23-28, 2025 emails from Bryan Freedman, # 14 (p.162) Exhibit K - Transcript of Initial Conference (2_3_25), # 15 (p.164) Exhibit L - 2025.02.04 - Notice of Nonsuit - Lively - Rule 202, # 16 (p.168) Exhibit M - 2025.03.19 Dkt. 142-1 Declaration of Jed Wallace, # 17 (p.172) Exhibit N - 2025.03.19 Dkt. 142 Memo of Law in Support of Defendants' Motion to Dismiss, # 18 (p.976) Exhibit O - 2025.05.14 Declaration of Laura Lee Prather ISO Defendant's Motion to Dismiss, # 19 (p.1776) Exhibit O-1 Legislative History Report and Analysis for Assembly Bill 933, # 20 (p.1779) Proposed Order Granting Defendant's Rule 12(b) Motion to Dismiss)(Prather, Laura) (Entered: 05/16/2025) |
| 05/19/2025 | | Text Order GRANTING 24 (p.1902) Motion for Leave to File Excess Pages. IT IS ORDERED that Defendant may file her Rule 12(b) Motion to Dismiss in excess of 20 pages not to exceed 35 pages. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 05/19/2025) |
| 05/19/2025 | 25 (p.2932) | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant's Motion to Dismiss First Amended Complaint* by Street Relations, Inc., Jed Wallace. (Dow, Matt) (Entered: 05/19/2025) |
| 05/19/2025 | 26 (p.2935) | Defendant's Motion to Dismiss the 21 (p.1782) Amended Complaint for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) by Blake Lively. (Attachments: # 1 (p.12) Exhibit List, # 2 (p.130) Exhibit A - 2025.02.18 Dkt. 84 Amended Complaint, # 3 (p.133) Exhibit B - Street Relations Inc. Articles of Incorporation, # 4 (p.136) Exhibit C - Certificate of Conversion - Street Relations Inc - CA SOS - Feb2025, # 5 (p.139) Exhibit D - Certificate of Conversion - Street Relations Inc - TX SOS - 6Feb2025, # 6 (p.142) Exhibit E - We Can Bury Anyone-Inside a Hollywood Smear Machine, New York Times, # 7 (p.145) Exhibit F - Baldoni CA Complaint, # 8 (p.148) Exhibit G - 2024.12.31 Dkt. 1 Complaint, # 9 (p.150) Exhibit H - Affidavit of Kelly Murski, # 10 (p.152) Exhibit I - Affidavit of Aaron Camp in Support of Motion for Substitute Service, # 11 (p.153) Exhibit J - January 23-28, 2025 emails from Bryan Freedman, # 12 (p.154) Exhibit K - Transcript of Initial Conference (2_3_25), # 13 (p.157) Exhibit L - 2025.02.04 - Notice of Nonsuit - Lively - Rule 202, # 14 (p.162) Exhibit M - 2025.03.19 Dkt. 142-1 Declaration of Jed Wallace, # 15 (p.164) Exhibit N - 2025.03.19 Dkt. 142 Memo of Law in Support of Defendants' Motio, # 16 (p.168) Exhibit O - 2025.05.14 Declaration of Laura Lee Prather ISO Defendant's Mot, # 17 (p.172) Exhibit O-1 Legislative History Report and Analysis for Assembly Bill 933, # 18 (p.976) Proposed Order Granting Defendant's Rule 12(b) Motion to Dismiss). (cnr) (Entered: 05/20/2025) |

| | | |
|---|---|---|
| 05/20/2025 | | Text Order GRANTING 25 (p.2932) Motion for Extension of Time to File Response/Reply. IT IS ORDERED that Plaintiffs' deadline to respond to Defendant's Motion to Dismiss shall be extended from May 30, 2025 to June 6, 2025. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 05/20/2025) |
| 06/06/2025 | 27 (p.3961) | Unopposed MOTION for Leave to Exceed Page Limitation *Plaintiffs' Response to Defendant's Motion to Dismiss in Excess of 20 Pages* by Street Relations, Inc., Jed Wallace. (Attachments: # 1 (p.12) Plaintiffs' Response to Defendant's Motion to Dismiss, # 2 (p.130) Exhibit A, # 3 (p.133) Proposed Order on Motion for Leave to File Excess Pages)(Babcock, Charles) (Entered: 06/06/2025) |
| 06/09/2025 | | Text Order GRANTING 27 (p.3961) Motion for Leave to File Excess Pages. IT IS THEREFORE ORDERED that Plaintiffs may file a response that is 35 pages or fewer. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 06/09/2025) |
| 06/09/2025 | 28 (p.4006) | Unopposed MOTION for Extension of Time to File Response/Reply as to 26 (p.2935) MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim by Blake Lively. (Attachments: # 1 (p.12) Proposed Order Granting Unopposed Motion to Extend Deadline)(Prather, Laura) (Entered: 06/09/2025) |
| 06/09/2025 | 29 (p.4009) | Plaintiffs' RESPONSE to Defendant Blake Lively's 26 (p.2935) MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim filed by Street Relations, Inc., Jed Wallace. (Attachments: # 1 (p.12) Exhibit A)(klw) (Entered: 06/09/2025) |
| 06/10/2025 | | Text Order GRANTING 28 (p.4006) Motion for Extension of Time to File Response/Reply. IT IS FURTHER ORDERED that Defendant's deadline to file a reply in support of her Motion to Dismiss is extended from June 13, 2025 to June 20, 2025. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 06/10/2025) |
| 06/17/2025 | 30 (p.4045) | NOTICE *of Blake Lively's Dismissal of Claims* by Street Relations, Inc., Jed Wallace (Attachments: # 1 (p.12) Exhibit)(Dow, Matt) (Entered: 06/17/2025) |
| 06/20/2025 | 31 (p.4052) | Unopposed MOTION for Leave to Exceed Page Limitation *of Reply in Support of Motion to Dismiss* by Blake Lively. (Attachments: # 1 (p.12) Brief - Defendant's Reply in Support of Motion to Dismiss, # 2 (p.130) Exhibit A - Opinion and Order, # 3 (p.133) Proposed Order Granting Unopposed Motion to Leave to File Reply in Excess of 10 Pages)(Prather, Laura) (Entered: 06/20/2025) |
| 06/23/2025 | | Text Order GRANTING 31 (p.4052) Motion for Leave to File Excess Pages. It is ORDERED that Defendant may file her Reply in Support of Motion to Dismiss in excess of 10 pages not to exceed 15 pages. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 06/23/2025) |
| 06/23/2025 | 32 (p.4209) | REPLY to Response to Motion, filed by Blake Lively, re 26 (p.2935) MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim filed by Defendant Blake Lively. (Attachments: # 1 (p.12) Exhibit A - Copy of Opinion and Order (Southern District of New York)). (cnr) (Entered: 06/23/2025) |

| | | |
|---|---|---|
| 07/16/2025 | 33 (p.4362) | NOTICE *of Court's Order Granting Motion to Dismiss* by Street Relations, Inc., Jed Wallace (Dow, Matt) (Entered: 07/16/2025) |
| 07/18/2025 | 34 (p.4365) | Plaintiff's Opposed Motion for an Order Requiring the Parties to Confer and Submit a Proposed Scheduling Order to the Court by Jed Wallace. (Attachments: # 1 (p.12) Proposed Order Compelling Rule 26(f) Conf. and Proposed Sched. Order)(Dow, Matt) Modified on 7/21/2025 to edit docket text (cnr). (Entered: 07/18/2025) |
| 07/21/2025 | 35 (p.4372) | RESPONSE to Motion, filed by Blake Lively, re 34 (p.4365) MOTION for Entry of Scheduling Order Deadlines filed by Plaintiff Jed Wallace (Prather, Laura) (Entered: 07/21/2025) |
| 07/22/2025 | 36 (p.4376) | NOTICE *of Order in New York Litigation* by Blake Lively (Prather, Laura) (Entered: 07/22/2025) |
| 07/22/2025 | 37 (p.4379) | REPLY to Response to Motion, filed by Street Relations, Inc., Jed Wallace, re 34 (p.4365) MOTION for Entry of Scheduling Order Deadlines filed by Plaintiff Jed Wallace (Dow, Matt) (Entered: 07/22/2025) |
| 07/31/2025 | 39 (p.4385) | NOTICE *of Defendants' Second Amended Complaint in New York Litigation (CORRECTED as to DKT 38)* by Street Relations, Inc., Jed Wallace (Dow, Matt) (Entered: 07/31/2025) |
| 10/23/2025 | | Text Order GRANTING IN PART AND DENYING IN PART 34 (p.4365) Motion for Entry of Scheduling Order. The Court will issue a separate order for scheduling recommendations. If the parties are unable to submit agreed scheduling recommendations the case will be referred to a United States Magistrate Judge for a status conference. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ps) (Entered: 10/23/2025) |
| 10/23/2025 | 40 (p.4388) | Order for Scheduling Recommendations and Advisory Concerning Magistrate Judge Assignment with Proposed Scheduling Recommendations attached. Proposed Scheduling Recommendations due by 11/22/2025. Signed by Judge David A. Ezra. (cnr) (Entered: 10/24/2025) |
| 11/05/2025 | 41 (p.4395) | NOTICE *of Court's Order Granting Motion to Dismiss* by Street Relations, Inc., Jed Wallace (Attachments: # 1 (p.12) Exhibit A - Nov. 5, 2025 SDNY Order Granting Wallace and Street Motion to Dismiss)(Emery, Victoria) (Entered: 11/05/2025) |
| 11/12/2025 | 42 (p.4440) | ORDER GRANTING Defendant's 26 (p.2935) Motion to Dismiss. Signed by Judge David A. Ezra. (cnr) (Entered: 11/12/2025) |
| 12/12/2025 | 43 (p.4461) | Appeal of Order entered by District Judge 42 (p.4440) by Jed Wallace. ( Filing fee $ 605 receipt number ATXWDC-21091116) (Babcock, Charles) (Entered: 12/12/2025) |
| 12/12/2025 | | NOTICE OF APPEAL following 43 (p.4461) Notice of Appeal (E-Filed) by Street Relations, Inc., Jed Wallace. Filing fee $ 605, receipt number ATXWDC-21091116. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (cnr) (Entered: 12/12/2025) |
| 12/23/2025 | 44 | TRANSCRIPT REQUEST by Jed Wallace for dates of 12/12/2025. Proceedings |

| | |
|---|---|
| (p.4463) | Transcribed: No. Court Reporter: No.. (Babcock, Charles) (Entered: 12/23/2025) |

# Tab 2

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JED WALLACE, | § | |
| STREET RELATIONS, INC. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-163 |
| | § | |
| BLAKE LIVELY, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFFS' NOTICE OF APPEAL

Take notice that Plaintiffs Jed Wallace ("Wallace") and Street Relations, Inc. ("Street")

(collectively, the "Wallace Parties"), pursuant to Rules 3 and 4 of the Federal Rules of Appellate

Procedure and 28 U.S.C. § 1291, hereby appeal to the United States Court of Appeals for the Fifth

Circuit from the November 12, 2025 Order Granting Defendant's Motion to Dismiss (Dkt. 42).


Dated: December 12, 2025                          Respectfully submitted,

                                                  **JACKSON WALKER LLP**

                                                  */s/ Charles L. Babcock*
                                                  Charles L. Babcock
                                                  Texas Bar No. 01479500
                                                  Joel Glover
                                                  Texas Bar No. 24087593
                                                  Tori Emery
                                                  Texas Bar No. 24126228
                                                  1401 McKinney, Suite 1900
                                                  Houston, TX 77010
                                                  (713) 752-4200
                                                  (713) 308-4110  [FAX]
                                                  cbabcock@jw.com
                                                  jglover@jw.com
                                                  temery@jw.com

                                                  Minoo Blaesche

25-51040.4461

Texas State Bar No. 24075102
Carl C. Butzer
Texas Bar No. 03545900
2323 Ross Avenue, Suite 600
Dallas, Texas 75206
(214) 953-6000
(214) 953-5822 [FAX]
mblaesche@jw.com
cbutzer@jw.com

Matt Dow
Texas Bar No. 06066500
Cody Lee Vaughn
Texas Bar No. 24115897
100 Congress Ave., Suite 1100
Austin, TX 78701
(512) 236-2000
(512) 391-2113 [FAX]
mdow@jw.com
cvaughn@jw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to all counsel of record.

*/s/ Charles L. Babcock*
Charles L. Babcock

25-51040.4462

# Tab 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JED WALLACE, STREET     §   No. 1:25-cv-00163-DAE
RELATIONS, INC.,               §
             *Plaintiffs*,    §
                        §
v.                           §
                        §
BLAKE LIVELY,              §
              *Defendant*.   §
_____

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed on May 19, 2025 (Dkt. # 26), by Defendant Blake Lively ("Defendant") seeking dismissal of Plaintiff Jed Wallace and Street Relations, Inc.'s ("Plaintiffs") Amended Complaint (Dkt. # 21). Plaintiffs responded on June 9, 2025 (Dkt. # 29), and Defendant replied on June 23, 2025 (Dkt. # 32.). The Court finds this matter suitable for disposition without a hearing.

After careful consideration of the filings and the relevant law, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 26).

BACKGROUND

This case arises out of the alleged sexual harassment and retaliation that took place during and after the filming of the movie *It Ends With Us* (the "Film"). (Dkt. # 26 at 3.) The underlying scandal of this lawsuit is one which has

1

25-51040.4440

garnered national attention and the Court now attempts only to provide a general summary of the details which are most relevant to the present order.

Defendant Blake Lively ("Defendant") starred in the Film alongside actor Justin Baldoni.  The Film was produced by Wayfarer Studios ("Wayfarer"), of which Baldoni is a co-owner.  (Id.)  Defendant alleges that Baldoni and Wayfarer CEO, Jamey Heath, harassed and retaliated against her after she reported such harassment.  (Id.)  Defendant alleges that as promotional events for the Film began in the summer of 2024, Baldoni became concerned that Defendant would speak publicly about the on-set harassment and solicited the assistance of crisis management expert, Melissa Nathan, and several other individuals (collectively "Baldoni's Team").  (Id.)  Plaintiffs Jed Wallace and Street Relations, Inc. ("Plaintiffs"), the "crisis mitigation firm" of which Wallace is the owner (Dkt. # 21 at ¶ 19), were first approached by Baldoni's Team in August of 2024 to assist it "in social/digital mitigation and remediation regarding Wayfarer Studios[.]"  (Id. at ¶ 22.)  Plaintiffs describe their job as "spott[ing] trends about the public's reaction to the Film and its starts and subsequently provid[ing] advice to [Baldoni's Team] on those subjects."  (Id. at ¶ 23.)

In December of 2024, Defendant filed an administrative complaint with the California Civil Rights Department ("CRD") as a required prerequisite to initiating a lawsuit in federal court (the "CRD Complaint").  (Dkt. # 26 at 4.)  The

2

CRD Complaint named Plaintiffs and others from Baldoni's Team as respondents and alleged the details that form the basis of Defendant's harassment and retaliation claims. (Id. at 4–5; Dkt. # 21 at ¶ 25) The day after Defendant filed the CRD Complaint, *The New York Times* published an article reporting on the allegations entitled, *'We Can Bury Anyone': Inside a Hollywood Smear Machine* (the "Article"). (Id. at 7; Dkt. # 21 at ¶ 6.) Plaintiffs allege that Defendant provided the press with her CRD Complaint and a 62-page draft complaint ("Draft Complaint") which listed Plaintiffs as defendants and included claims arising from the alleged harassment that took place on set of the Film and the alleged retaliation that followed. (Dkt. # 21 at ¶ 3.) In the days that followed, multiple media organizations reported on the CRD and Draft Complaints. (Id. at ¶ 6.)

Soon after, in late December of 2024, Defendant filed a final version of the Draft Complaint in the United Stated District Court for the Southern District of New York that did not name Plaintiffs as defendants (the "NY Litigation"). (Id. at ¶ 7.) That same day, Plaintiffs and others named in the CRD Complaint initiated a lawsuit against *The New York Times* in California state court. (Dkt. # 26 at 7.) In January of 2025, Defendant initiated a Rule 202 petition in Texas state court to obtain a pre-suit deposition of Plaintiff Wallace to "investigate the full nature and scope of his role in implementing and carrying out the retaliatory campaign." (Id. at 8.) Defendant paid a fee to file the petition and hired process servers to serve

3

25-51040.4442

Plaintiff Wallace but failed to do so, and Defendant ultimately non-suited the petition ten days after filing it.  (Dkts. ## 21 at ¶ 10; 26 at 9.)

Other members of Baldoni's Team, who were named as defendants in the NY Litigation, filed suit against Defendant and *The New York Times* in New York, and this case was ultimately consolidated with Defendant's suit in the NY Litigation.  (Dkt. # 26 at 8.)  Plaintiffs did *not* participate as plaintiffs in the NY Litigation but were later added to Defendant's claims.  (Dkts. ## 21 at ¶ 12, 26 at 9.)  The parties to the California lawsuit, including Plaintiffs, later dismissed the California suit.  (Dkt. # 26 at 9.)  The NY Litigation is ongoing, and while the Court will not summarize the extensive proceedings, it notes two facts: (1) Defendant's claims against Plaintiffs in the NY Litigation have been dismissed for lack of personal jurisdiction (Dkt. # 41), and (2) the defamation claims against Defendant brought by the other members of Baldoni's Team, not including Plaintiffs, have been dismissed (Dkt. # 36 at 2).  See Lively v. Wayfarer Studios LLC, No. 24-CV-10049, 2025 WL 3085598 (S.D.N.Y. Nov. 5, 2025); Lively v. Wayfarer Studios LLC, 786 F. Supp. 3d 695 (S.D.N.Y. 2025).

In the present case before this Court, Plaintiffs assert claims of defamation against Defendant for the publishing of the Draft and CRD Complaints which they allege falsely accused them of illegal conduct, sexual harassment, and retaliation.  (Dkt. # 21 at ¶¶ 67–73.)  In essence, they argue that publications of the

4

25-51040.4443

Draft and CRD Complaints suggests that Plaintiffs were involved in the sexual harassment on set, which they were not present for, and "paint[] a nefarious picture" of Plaintiffs that misstates their role in the alleged retaliation campaign. (See id. at ¶¶ 44–48, 71.)

On February 4, 2025, Plaintiffs filed suit in this Court. (Dkt. # 1.) Plaintiffs later filed an Amended Complaint on April 24, 2025. (Dkt. # 21.) In their Amended Complaint, Plaintiffs assert claims for defamation and defamation per se. (Id. at 20.) On May 19, 2025, Defendant filed the present Motion to Dismiss. (Dkt. # 26.) Defendants seek dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Id. at 2.)

LEGAL STANDARD

I. Motion to Dismiss under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. A court must determine whether it has personal jurisdiction over the defendant by "first determin[ing] whether the long arm statute of the forum state permits exercise of jurisdiction[,] . . . then determin[ing] whether such exercise comports with due process." Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993). "The Texas long-arm statute extends to the limits of the Constitution," and a Texas

5

court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause." Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008). "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state. Such contacts can give rise to general or specific jurisdiction." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). However, the Fourteenth Amendment also "limit[s] the power of a State to assert in personam jurisdiction over a nonresident defendant." Helicopteros Nactionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant. Stroman, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction). If a defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contact with the forum.'" Id. (quoting Helicopteros, 466 U.S. at 415 n. 9).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction. Nuovo Pignone, PsA v. STORMAN ASIA M/V, 310 F.3d 374, 378

25-51040.4445

(5th Cir. 2002); Elly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000).  Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  If a defendant's contacts with the forum state are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction.  Id.

II.    Motion to Dismiss under Rule 12(b)(3)

A party moving to dismiss based on improper venue does so pursuant to Federal Rule of Civil Procedure 12(b)(3).  "In an action not based on diversity, proper venue lies in either '(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.'"  McClintock v. Sch. Bd. E. Feliciana Par., 299 Fed. Appx. 363, 365 (5th Cir. 2008) (citing 28 U.S.C. § 1391(b)).

25-51040.4446

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." Braspetro Oil Servs. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007). However, the Court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by the parties as part of the venue motion. Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. See 28 U.S.C. § 1406(a).

III.     Motion to Dismiss under Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well–pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

8

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

The tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.  Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).

9

<u>DISCUSSION</u>

I.      <u>Personal Jurisdiction</u>

A court must first address jurisdictional matters, and if jurisdiction is lacking, the court will not reach the merits. <u>Steel Co. v. Citizens for a Better Env't.</u>, 523 U.S. 83, 94 (1995). Therefore, the Court will first consider whether it has personal jurisdiction over Defendant.

Neither party asserts that the Court has general personal jurisdiction over Defendant. (Dkt. # 29 at 13; Dkt. # 32 at 10 n.10.) Instead, Plaintiffs argue that the Court has specific personal jurisdiction over Defendant because her contacts "'are less pervasive' but arise out of or are related to the Defendant's contact with the forum." (Dkt. # 29 at 13) (quoting <u>YETI Coolers, LLC v. Mercatalyst, Inc.</u>, No. 1:22-CV-01337-DAE, 2023 WL 11852866, *2 (W.D. Tex. Nov. 14, 2023)). Specific jurisdiction affords a narrower authority and will apply if a defendant "purposefully avails" itself of the opportunity to do business in the forum State and the suit "'arise[s] out of or relate[s] to'" the defendant's contacts with the forum State. <u>Helicopteros</u>, 466 U.S. at 415 n.9. The "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. <u>Burger King</u>, 471 U.S. at 472.

10

25-51040.4449

Defendant offers several arguments as to why this Court lacks personal jurisdiction over her.  First, Defendant argues that the Rule 202 petition she filed in Texas state court does not subject her to personal jurisdiction.  (Dkt. # 26 at 16–18.)  Second, Defendant argues that the Calder effects test does not subject her to personal jurisdiction.  (Id. at 18–19) (citing Calder v. Jones, 465 U.S. 783 (1984)).  Lastly, Defendant maintains that Plaintiffs' allegations, based on information and belief, that Defendant continued to repeat the defamatory statements while in Texas is a failed attempt to manufacture personal jurisdiction. (Id. at 19–20.)  The Court will address each argument in turn.

A.     Rule 202 Petition

Plaintiffs argue that by filing the Rule 202 petition, paying the filing fees, and hiring process servers to serve the petition, Defendant personally availed herself to the jurisdiction of Texas.  (Dkt. # 29 at 13–17.)  A party "submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter" when it "seeks affirmative relief from [the] court." PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland), 260 F.3d 453, 460–61 (5th Cir. 2001).  A party may also waive any objections to personal jurisdiction when it chooses to litigate extensively on the merits.  Id. at 459 (citing General Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 23 (1st Cir. 1991)).  Thus, Plaintiffs seem to be arguing that by filing the Rule 202 petition,

11

25-51040.4450

which they refer to as the "Texas Lawsuit" (Dkt. # 21 at ¶ 40), Defendant personally availed herself by seeking affirmative relief from the Texas state court or by otherwise actively litigating.

In response, Defendant argues that the Rule 202 petition is not an "original action," and that she did not otherwise litigate extensively on the merits because Defendant non-suited the petition fourteen days after filing it without ever serving Plaintiffs. (Dkts. ## 26 at 16–18; 32 at 10–11.) The Court agrees.

"Courts hold consistently that a Rule 202 petition is a request for discovery, not a claim, demand, or cause of action." RJ Mach. Co. v. Canada Pipeline Accessories Co., No. A-13-CA-579-SS, 2015 WL 5139295, *5 (W.D. Tex. Aug. 31, 2015) (citing Texas v. Real Parties in Interest, 259 F.3d 387, 394 (5th Cir. 2001) (describing a Rule 202 proceeding as "only an investigatory tool" for potential claims that may or may not ultimately result in a cause of action); In re Valeras Compression Servs., LP, No. 14–14–00019–CV, 2015 WL 2169656, *4 (Tex.App.—Houston [14th Dist.] May 7, 2015, not pet.) (McNally, J., concurring) ("A Rule 202 petition for pre-suit discovery is so distinct from a traditional lawsuit that the majority of Texas courts to consider the question hold that a Rule 202 proceeding may not be removed to a federal court.")). A Texas state court described a Rule 202 petition as:

> ultimately a petition that asserts no substantive claim or cause of
> action upon which relief can be granted. A successful rule 202

12

25-51040.4451

petitioner simply acquires the right to obtain discovery-discovery that may or may not lead to a claim or cause of action . . . We cannot agree that a rule 202 petition is itself a 'suit,'. . . .

Combs v. Tex. Civil Rights Project, 410 S.W.3d 529, 534 (Tex. App.—Austin 2013, pet. denied).

Although there is no direct authority as to whether a Rule 202 petition constitutes "seeking affirmative relief" for purposes of conferring personal jurisdiction, the case law is clear that a Rule 202 petition is not a "civil action" for purposes of removal to federal court. See In re Highland Cap. Mgmt., L.P., No. 19-34054-SGJ11, 2022 WL 38310, *6 (Bankr. N.D. Tex. Jan. 4, 2022) (summarizing a multitude of cases that have opined that a Rule 202 petition is not removable as a civil action). Given the plethora of case law holding that a Rule 202 petition is not a civil action for purposes of removal but is merely a tool of discovery to investigate a *potential* cause of action, the Court accordingly declines to interpret Defendant's Rule 202 petition as "seek[ing] affirmative relief" that subjects her to the state's personal jurisdiction.

Furthermore, the two cases that Plaintiffs cite in support of their argument are taken out of context and are not binding. (Dkt. # 29 at 15–16.) Plaintiffs first cite an opinion out of the Supreme Court of Texas for the principle that a Rule 202 petition is the "progeny of a common-law suit in equity." (Id. at 15) (citing In re Doe, 444 S.W.3d 603, 605–07 (Tex. 2014) (Hecht, C.J.) (recounting

13

the history that led to Rule 202 to discern its nature)).  Plaintiffs emphasize that the Texas Supreme Court made clear that a court entertaining a Rule 202 petition must have both subject matter and personal jurisdiction.  (Id. at 15–16) (citing In re Doe, 444 S.W.3d at 608).  However, this decision is not binding and only states that the Texas *state* court in which a Rule 202 petition is filed must have personal jurisdiction over the *defendant* who the Rule 202 petitioner seeks to depose—in this case, Wallace.  See In re Doe, 444 S.W.3d at 608.  That has no bearing on this *federal* court's personal jurisdiction over the Rule 202 *petitioner* in a separate action—in this case, Lively.

Petitioners next cite an opinion out of the Third Court of Appeals of Texas holding that a Rule 202 petition was a "legal action" subject to a motion to dismiss under the TCPA because "the relief sought by a Rule 202 petition investigating a potential claim or suit is an equitable remedy."  (Id. at 16) (citing In re Elliott, 504 S.W.3d 455, 466–67 (Tex. App.—Austin 2016, orig. proceeding)).  Once again, this decision is not binding on this Court, and a closer look at In re Elliot clarifies that the court held that a Rule 202 petition is a 'legal action' only within "the TCPA's *broad* definition of 'legal action' . . . ."  504 S.W.3d at 465 (emphasis added).  Therefore, Plaintiffs' argument is overwhelmed by the *federal* case law supporting the Court's conclusion that Defendant's Rule 202 petition does not amount to an "original action" seeking affirmative relief that would subject her

14

25-51040.4453

to this Court's personal jurisdiction.[1]  See PaineWebber, 260 F.3d at 460–61;

Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co., 921 F.3d 522, 541

(5th Cir. 2019) (holding that filing a counterclaim or third-party claims is not an

original action which would subject a party to personal jurisdiction).

Lastly, Defendant's Rule 202 petition does not amount to "litigat[ing]

actively on the merits [which would] thereby surrender any jurisdictional

objections."  PaineWebber, 260 F.3d at 459.  The Rule 202 petition was filed by

Defendant on January 21, 2025, and non-suited by Defendant on February 4, 2025.

(Dkts. ## 26 at 8, 29-13).  The Rule 202 petition was only pending for fourteen

days and Defendant never served Plaintiff Wallace (Dkt. # 26-13) before non-

suiting the petition.  Therefore, the Court finds that Plaintiffs have failed to

demonstrate that Defendant's Rule 202 petition subjects her to the Court's personal

jurisdiction.

B.     Calder Effects Test

Plaintiffs also argue that the CRD Complaint, upon which this lawsuit

is based, was "aimed at Texas where both Plaintiffs reside and they undoubtedly

---

[1] Although Plaintiffs also argue that Defendant paid fees to a Texas governmental entity to file the Rule 202 petition and hired process servers to serve Plaintiff Wallace with the petition (Dkt. # 29 at 8–11), these supporting facts are not persuasive as they are merely means of effectuating the Rule 202 petition, which the Court has already found to be insufficient to subject Defendant to the Court's personal jurisdiction.

caused harm. Two mentions of Wallace in the Draft Complaint specifically state that he is based in Texas." (Dkt. # 21 at ¶ 59.) Defendant interprets this as an application of the <u>Calder</u> effects test (Dkt. # 26 at 18), and so the Court will analyze it as such.[2]

Calder v. Jones, 465 U.S. 783, 789 (1984), adopted a doctrine colloquially referred to as the "effects" test. The <u>Calder</u> effects test permits courts to exercise specific personal jurisdiction over "an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there." <u>Fielding v. Hubert Burda Media, Inc.</u>, 415 F.3d 419, 425 (5th Cir. 2005). In <u>Calder</u>:

> The . . . story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

465 U.S. at 788–89. The Fifth Circuit examined not only the effects of the defendants' actions, "but that the defendants had directed their actions towards the forum, and knew their effects would be felt there." <u>Fielding</u>, 415 F.3d at 425 (citing <u>Calder</u>, 465 U.S. at 789–90). It held that, "to exercise specific jurisdiction

---

[2] Plaintiffs also later rely on <u>Calder v. Jones</u>, 465 U.S. 783 (1984) in their response. (Dkt. # 29 at 14.)

16

in a libel action, the 'aim' of the [publisher] under the Calder test must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for the article were in the forum state." Id. at 426 (citing Revell v. Lidov, 317 F.3d 467, 474 n.48 (5th Cir. 2002).

In Fielding, the plaintiffs, a married couple living abroad, were suing the German publisher of several articles detailing the alleged affair of the husband and its aftermath. Id. The articles reference the wife's college years and modeling career in Texas, included an interview with her Texan ex-husband, and the plaintiffs' alleged injury to their reputation amongst their family, friends, and acquaintances occurred in Texas. Id. at 424, 426. However, the Court found that these descriptions "served merely to supply background, biographical information." Id. at 426. Despite the publisher's acknowledgment of the use of Texas sources, the Court found that "the clear thrust of the articles, as merely echoing the affair allegations of the Swiss tabloid . . . shows the marginal importance of this Texas research." Id. Lastly, the Court found that the brunt of the injury was suffered in Germany and that the defendant's "[k]nowledge that sufficient harm would be suffered in Texas [was] conspicuously lacking" because the subject of the reporting was on German residents and directed at a German audience. Id. at 427.

17

25-51040.4456

In comparison, Plaintiffs allege that Defendant's "defamatory statements were aimed at Texas where both Plaintiffs reside and they undoubtedly caused harm in Texas[]" because "[t]wo mentions of Wallace in the Draft Complaint specifically state that he is based in Texas." (Dkt. # 21 at ¶ 59.) However, stating that Plaintiff Wallace is based in Texas "served merely to supply background, biographical information[,]" and is even less prevalent than the level of detail alleged in the Fielder article. Id. at 426. Furthermore, Plaintiffs do not allege that Defendant relied on any Texas sources in writing the CRD and Draft complaints.

Lastly, Plaintiffs have not sufficiently alleged that the defendants "directed their actions towards the forum, and knew their effects would be felt there." Fielding, 415 F.3d at 425 (citing Calder, 465 U.S. at 789–90). Plaintiffs argue that Defendant "published the defamatory CRD Complaint and the Draft Complaint and provided the documents to the press who promptly republished them, as she hoped and foresaw, in Texas and elsewhere." (Dkt. # 29 at 14.) However, while the CRD Complaint was allegedly shared with *The New York Times* and was republished "all over the world, including in Texas," (Dkt. # 18 at ¶ 24) there is nothing to indicate that the article was targeting Texas readers as distinguished from readers in other states. See Revell v. Lidov, 317 F.3d 467, 473 (5th Cir. 2002). Furthermore, the CRD and Draft Complaints both focused on

18

events taking place outside of Texas.  (See Dkts. ## 21-1; 21-2.)  Based on the

foregoing, the Court finds that Defendant's actions do not subject her to the

personal jurisdiction of this Court under the Calder effects test.

C.  Information and Beliefs Statement

Lastly, Plaintiffs contend that "on information and belief, additional

defamatory statements about Plaintiffs were made by Lively at SXSW in Austin,

Texas and later in Waco . . . ."  (Dkt. # 21 at ¶ 64.)  More specifically, Plaintiffs

allege that "when confronted by a Texas resident who stated that 'Blake Lies' and

referenced 'Justice for Justin,' Lively never admitted that her statements were false

but rather allowed her lies to stand . . . ."  (Id. at ¶ 14.)  They further allege that

Defendant "made additional defamatory comments about Plaintiffs" at a hotel in

Waco (id. at ¶ 15), and that further discovery "may reveal whether she made any

additional defamatory remarks about Plaintiffs" at her promotion of the Film at the

Texas Book Bonanza event (id. at ¶¶ 60–63).

Defendant argues that "Information and Belief Statements cannot

satisfy Plaintiffs' burden to plead facts that 'establish a prima facie case of personal

jurisdiction' at the motion to dismiss stage."  (Dkt. # 26 at 18) (citing Salermo v.

Hughes Watters & Askanase LLP, 516 F. Supp. 3d 696, 710 (S.D. Tex. 2021)).  As

to Defendant's alleged silence in response to a fan's confrontation at SXSW,

19

Defendant argues that silence alone does not constitute a defamatory statement. (Id. at 26.)

The Court finds that these allegations are insufficient to support any claim, including to establish personal jurisdiction. See Elec. & Gas Tech., Inc. v. Universal Commc'n Sys., Inc., No. CIV.A. 303CV1798-G, 2003 WL 22838719, *5 (N.D. Tex. Nov. 24, 2003) ("Unproffered 'information' and unsubstantiated 'belief' that [Defendant] has made 'material contacts in Texas' is clearly insufficient to warrant this court's exercise of *in personam* jurisdiction over [Defendant].") (citations omitted). It is Plaintiffs' burden to establish personal jurisdiction when faced with a motion to dismiss for lack of personal jurisdiction, and they have failed to present any "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery" that the Court may use to determine the jurisdictional issue. Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997); see also Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994). While the Court recognizes that Plaintiffs may not have had extensive opportunity in the present case to conduct discovery, the issues underlying this case have been under extensive litigation in other courts for nearly a year and yet Plaintiffs fail to provide the Court with any greater level of detail beyond the speculation that "on information and belief," Defendant repeated the defamatory remarks while in Texas. (See Dkt. ## 21 at ¶¶ 14–15, 29 at 22.)

20

25-51040.4459

Accordingly, the Court concludes that Plaintiffs have failed to establish that Defendant is subject to this Court's personal jurisdiction. When a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2). Because the Court's finding of no personal jurisdiction resolves the motion to dismiss, the Court need not address Defendant's other bases for dismissal. See Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 232 (5th Cir. 2012) (affirming district court's decision to "dispose of the personal jurisdiction issue first and [ ] not proceeding further after concluding that it lacked personal jurisdiction").

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 26) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**SIGNED:** Austin, Texas, November 12, 2025.

_____
David Alan Ezra
Senior United States District Judge

21

# Tab 4

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JED WALLACE, | § | |
| STREET RELATIONS, INC. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 25-163 |
| | § | |
| | § | **Jury Trial Demanded** |
| BLAKE LIVELY, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

1.      Jed Wallace ("Wallace") and Street Relations, Inc. ("Street") (collectively "Plaintiffs") bring this action against Blake Lively ("Lively" or "Defendant") for defamation as follows:

### I.   INTRODUCTION

2.      Jed Wallace works from home in the Texas Hill County for Street, a small Texas company he founded and owns. Wallace was described by one of Lively's attorneys as living in the "shadows" with "no online presence" and "no public profiles." That ended on the Friday before Christmas, December 20, 2024, when his privacy was shattered to be replaced by the harsh (and in this case false, defamatory and undeserved) glare of the Hollywood spotlight involving two of the industry's biggest names, Lively and Justin Baldoni ("Baldoni"), and the movie they starred in, *It Ends With Us* ("Film").

25-51040.1782

3.      On that day (and before) Lively provided the press with her (i) three page form employment complaint filed with the California Civil Rights Division ("CRD Complaint") naming Wallace and Street as "Respondents" and alleging they had sexually harassed Lively and then retaliated when she reported the harassment (Ex. 1), and (ii) a 62-page 203-numbered paragraph draft complaint ("Draft Complaint") (Ex. 2) purportedly attached to the CRD Complaint, listing Wallace and Street as "Defendants" regarding ten claims ranging from "Sexual Harassment" to "Breach of Contract," and asserting that the harassment had taken place on the set of the movie and the retaliation occurred "in the days leading up to the Film's release." Wallace and Street were never on the set of the Film or otherwise involved in its production and their limited and sole involvement in gauging public reaction to the film and its stars occurred *after* the Film's release, not in "the days leading up to" it.

4.      The filings with the California agency are not available online and only available to the public pursuant to a written request for public information and yet, that night at 8:48 pm (ET), the day the CRD and Draft Complaints were filed, a reporter sent Wallace an "Urgent" page and a half e-mail which stated that she had "learned that Ms. Lively filed a legal complaint against you … alleging sexual harassment, retaliation … among other claims." She described details from the Draft Complaint including that "the complaint includes extensive private text messages and emails (which) include exchanges involving you." She added that "court records show that your clients have included Paramount Pictures," an obscure fact not easily uncovered.

5.      The reporter demanded that "we need to hear back from you by tomorrow (Saturday) by noon Eastern." At least as early as 5:26 am (ET) the next day (Saturday), which is before noon on most clocks, the reporter's newspaper posted the Draft Complaint (which was only a draft and never filed in any court) on its website under the banner: **"READ THE COMPLAINT."** The document remains on the website today. Lively[1] provided all of this information to the reporter and her newspaper.

6.      That Saturday (December 21, 2024) media including the *New York Times*, *The Hollywood Reporter*, *TMZ*, *E!News*, *Variety*, *Today*, *CNN*, *People Magazine* (which named Wallace), *Fox News* and *USA Today* all reported on the CRD Complaint or the Draft Complaint giving prominence to Lively's allegations. The next day additional media, including at least three outlets in Texas, reported on the Complaints. The CRD and Draft Complaints or the contents thereof had been shared by Lively with multiple media although she granted one newspaper exclusive access to "thousands of pages of text messages … and other documents (which) were reviewed by the (newspaper)"as noted in a lengthy article published within hours of the CRD and Draft Complaints filings under the headline: **'We Can Bury Anyone': Inside a Hollywood Smear Machine.**

7.      Then, on New Year's Eve 2024 the Draft Complaint, which had by this time grown into a 93-page, 327-numbered paragraph document ("The Real Complaint"), was filed in the United States District Court for the Southern District of

---

[1] When referring to Lively we mean to include her agents including her lawyers, consultants and husband, Ryan Reynolds and their related entities, including but not limited to Betty Buzz, LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions.

25-51040.1784

New York ("New York Case"). But the Real Complaint, unlike the CRD and the Draft Complaints, **did not include Wallace or Street as defendants or Respondents.**[2] The reason for this omission was certainly known to Lively. There was and is no evidence to support the defamatory statements of and concerning Wallace or Street made in either the CRD or Draft Complaints or the press reports republishing her defamatory allegations. They had nothing to do with the production or marketing of the Film.

8.     This lack of proof explains why, three weeks later, Lively sued Wallace in Texas state court to obtain potential evidence of Wallace's alleged involvement in the matter, even retaining one of Wallace's former lawyers (who had represented him in a matter involving Paramount Pictures) to prosecute the Texas Lawsuit against him, to defend this case and serve as co-counsel with Lively's five other lawyers in the New York Case.

9.     That lawyer filed a lawsuit against Wallace in Hays County, Texas seeking to take his deposition. Lively represented to the judge under oath that she needed the discovery "to understand and evaluate potential claims (so that) any suit filed by (Lively against Wallace) is supported by competent witness testimony and evidence" and swearing that without this evidence any lawsuit against Wallace would be groundless and in bad faith or for harassment or improper purpose under Tex. Civ. Prac. & Rem. Code § 9.011 as prohibited by Tex. R. Civ. P. 13. ("Texas Lawsuit"). In other words, she sought from a *Texas* judge, in *Texas,* evidence from a

---

[2] Even so media continued to report that Wallace and Street were defendants even though they were not.

*Texan* to support her false claims in the CRD and Draft Complaints targeting, as to Wallace and Street, *Texas* residents.

10.    The Texas lawsuit was done purposely, and Lively paid a fee to the Hays County clerk to avail herself of the privilege of conducting activity in the Texas court system and she listed ten lawyers (Prather, Gottlieb, Bender, Hudson, Roeser, Noble, Keck, Pillifant, Wallace and Mitchell) from three law firms (Haynes and Boone, Wilkie and Manatt) as her representative contacts for the case. The Texas Lawsuit related directly to a claim or defense in this lawsuit that is, truth or falsity and fault. As we shall see, Lively purposely turned away from her self-styled investigation into the truth which is probative of both negligence and actual malice.

11.    What happened next is remarkable. Without waiting for the *Texas* judge to rule and, accordingly, without taking Wallace's deposition, Lively dismissed her Texas Lawsuit falsely (actually, preposterously) claiming to the Court that Baldoni's lawyer, in a hearing in the New York Case, suggested that she do so.

12.    And then, without any evidence and knowing (obviously) that neither Wallace nor Street had sexually harassed her or retaliated against her for publicizing the allegations, or breached a contract with her (no such contract exists), **she joined Wallace and Street in the New York Complaint as defendants** claiming that "Wallace and Street Relations intentionally violated Ms. Lively's rights under the California Fair Employment and Housing Act acting with malice, oppression and fraud."

13.    She added in the New York Case that Wallace and Street acted "despicably, maliciously, fraudulently and oppressively with the wrongful intention of injuring Ms. Lively." She branded Wallace as "evil," claiming he had no regard for

Jed Wallace's Amended Complaint

25-51040.1786

the rights or safety of Lively and others and intentionally caused her extreme emotional distress. Finally, she claimed Wallace and Street placed her in a "false light" forgetting, perhaps, that neither Texas (which is home for Wallace and Street) nor New York (where Lively lives) recognizes this claim, which is without merit in any event.

14.     After this lawsuit (on February 4, 2025) and after she sued Wallace and Street (February 18, 2025) in New York ("Amended New York Lawsuit"), Lively, accompanied by her publicists Leslie Sloan and Jami Kandel, appeared at SXSW in Austin, Texas where, on information and belief, she made additional false and defamatory remarks of and concerning the Plaintiffs. Specifically, when confronted by a Texas resident who stated that "Blake Lies" and referenced "Justice for Justin," Lively never admitted that her statements were false but rather allowed her lies to stand thus defaming Plaintiffs by, at the very least, implication. On information and belief while in Austin, Lively made additional defamatory remarks concerning Plaintiffs. Discovery will reveal the extent of those statements.

15.     During her stay in Texas, Lively also traveled to Waco to visit Chip and Joanna Gaines' hotel and while there engaged in a confrontation with a young girl who was attempting to take Lively's photograph. On information and belief, Lively made additional defamatory comments about Plaintiffs, purposefully availing herself of the Texas forum. Discovery will reveal the extent of those remarks.

16.     On February 5, 2025, Plaintiffs demanded that Lively retract, clarify or correct defamatory statements made by her. On March 7, 2025, Lively availed herself of her rights under a *Texas* law (Tex. Civ. Prac. & Rem. Code, Section 73.056(a))

Jed Wallace's Amended Complaint                                     Page **6** of **26**

25-51040.1787

and demanded certain information from Plaintiffs under the statute. Plaintiffs complied. As of this filing Lively has neither retracted, clarified nor corrected her defamatory statements even though she knows that Plaintiffs had nothing to do with the alleged sexual harassment and further knows that she may avoid punitive damages for part of the claim if she were to retract, again availing herself of the protection afforded by the *Texas* law.

17.  All conditions precedent to the filing of this suit have been satisfied by Plaintiffs.

18.  Lively reasonably foresaw that her furious allegations would be republished by the media "worldwide" and that this form of hell would be visited upon Plaintiffs who, it should be noted, never did anything to earn her scorn.

## II.  PARTIES

19.  Wallace is a citizen of Texas and resides in Dripping Springs which is within the Austin Division of the United States District Court for the Western District of Texas. He owns a small company, Street, a crisis mitigation firm primarily helping families and individuals who find themselves unjustly attacked, extorted, doxed, swatted, scammed or needing help navigating their most frightening situations. Doing so requires a low profile so that when people retain Wallace and Street, they do not call attention to themselves—attention that would harm the goals of their recovery which, in some cases, includes addiction.

20.  Street is a Texas corporation (previously California) and, since 2021 (long before the defamation complained of here), maintained its principal place of business in Texas and is therefore a citizen of a state other than New York.

21.     Lively is an actress and entrepreneur and is a citizen of New York.

### III.   FACTUAL BACKGROUND

22.     *It Ends With Us* premiered at the AMC Lincoln Square in New York City on August 6, 2024, although it was first shown weeks before in Texas at an event, Book Bonanza. Street was first approached on August 7, 2024, by TAG PR ("TAG") about assisting it in social/digital mitigation and remediation regarding Wayfarer Studios (the Film's Production Studio).

23.     On August 9, 2024, Street began work on the three month project by monitoring social media regarding the movie and its two stars, but did not publish any information to third parties about the participants or anything else, but rather spotted trends about the public's reaction to the Film and its stars and subsequently provided advice to TAG and Wayfarer on those subjects.

24.     Plaintiffs had no involvement in the production of or marketing of the Film and never interacted with Lively at any time. Lively, however, included Plaintiffs in her sexual harassment/retaliation CRD Complaint and Draft Complaint, and leaked those documents to the press and other third parties. Lively reasonably foresaw that her defamatory accusations against Plaintiffs would be republished and they were, all over the world, including in Texas, causing damage to Plaintiffs.

25.     The CRD Complaint alleged that Wallace and Street "engaged in a variety of conduct in violation of California Government Code section 12940 ("FEHA") and Title VII of the Civil Rights Act of 1964 ("Title VII")." The CRD Complaint went on to allege that Wallace's and Street's "conduct includes: sexual

harassment, retaliation; failure to investigate, prevent, and/or remedy harassment; and aiding and abetting harassment and retaliation." Ex. 1.

26. The CRD Complaint also asked the reader to "please see attached complaint for specific details." This CRD Attachment was the Draft Complaint which had many indicia of a stand-alone legal complaint. *See* Ex. 2. Indeed, some media later published the Draft Complaint under the headline: "**Read The Complaint.**" The Draft Complaint named Wallace and Street as Defendants and sought damages for (1) "Sexual Harassment" under California and Federal Law; (2) Retaliation under California and Federal Law; (3) Failure to Investigate, Prevent, and/or remedy harassment under California law; (4) Retaliation under the California Labor Code; (5) Aiding and Abetting Harassment and Retaliation under California Law; (6) Breach of Contract; (7) Intentional Infliction of Emotional Distress; (8) Negligence; (9) False Light Invasion of Privacy under the California Constitution; and (10) Interference with Prospective Economic Advantage.

27. Critically, however, the Draft Complaint was missing several indispensable components such as: (i) the name of the Court, (ii) the cause number, (iii) the causes of action, (iv) the prayer for relief including a statement of damages, and (v) the signature block for Lively's lawyers (although they were listed on the first page as customary in California but not New York where the case (minus the Plaintiffs) was ultimately filed over a week later).

28. Adding to the confusion, Lively used ambiguous group pleading by lumping Plaintiffs into phrases like "Wayfarer parties," "Wayfarer team," "TAG digital team," "Baldoni-Wayfarer team," "Respondents" and "Defendants." That

Jed Wallace's Amended Complaint

Page **9** of **26**

left a reasonable reader with the impression that all causes of actions—severe allegations of sexual harassment and violations of California and federal law—are attributable to all defendants, including Plaintiffs and/or Respondents.

29. Beyond listing the causes of action on the first page of the Draft Complaint, Lively makes several specific statements about Plaintiffs. First, in paragraph 18, Lively specifically states that Plaintiffs are "a Texas-based contractor … who weaponized a digital army around the country … to create, seed, and promote content that appeared to be authentic on social media platforms and internet chat forums"—a false statement other than "a Texas-based contractor."

30. Second, the Draft Complaint identified "Mr. Jed Wallace, an independent contractor based in Austin, Texas, who was retained by TAG to perform social media services on behalf of Wayfarer and Mr. Baldoni in connection with TAG's engagement." Ex. 2, ¶139. Wallace is an independent contractor and he is based in Texas near Austin. He was not, however, retained by TAG for any purpose and it was false to say so.

31. On top of the specific statements, the overall gist or sting of the Draft Complaint was that Plaintiffs sexually harassed Lively and retaliated against her in violation of state and federal laws. The gist was and is false.

32. Lively went far beyond merely saying "these are my allegations." Instead, she or her agents communicated them as standalone facts. Indeed, in the end of the Draft Complaint she claimed that she had "discover[ed] the full extent of the retaliatory campaign launched by the Wayfarer Parties[.]" Ex. 2, ¶203. This is at odds with what she later told a Texas judge: that she needed Wallace's deposition to

learn about his involvement in the alleged sexual harassment and purported retaliation.

33.     She also alleged in the Draft Complaint that "Lively s[ought] to set the record straight, to hold the Wayfarer Parties and Associates accountable, and to shine a light on this new form of retaliation …" *Id.* Elsewhere, Lively claims that retaliation is about "the risk of [her] ever revealing the truth," *Id.* at ¶18, which, she claims to be doing in the Draft Complaint by shining a light and setting the record straight, *Id.* at ¶203. Lively fully intended this Draft Complaint—a press release dressed as a not-yet-fully-baked lawsuit—to be taken as statements of fact, including about the Plaintiffs. And of course she mistakenly thought that by purportedly attaching it to an administrative filing she would create a privilege against a defamation action such as this.

34.     In any event, nothing in the CRD rules require a complaint with such specificity or to attach the (incomplete) Draft Complaint which was totally gratuitous and unnecessary for Lively to obtain a Right to Sue letter, and some of the asserted claims in the Draft Complaint were not even within the California Agency's jurisdiction.

35.     On the same day that the CRD Complaint, with the Draft Complaint purportedly attached, was filed (December 20, 2024), the Civil Rights Department issued Lively a "Right to Sue" letter.

36.     The CRD Complaint, the Draft Complaint, and the Right to Sue letter were not posted online. There was no public filing of these documents on December

20, 2024, or at any other time. The only way for a third-party to obtain these documents was through a public information request or for the applicant to provide it themselves.[3]

37. Neither Plaintiffs nor their representatives provided either the CRD Complaint or the Draft Complaint to the media at any time. It is not plausible that news media became aware of the CRD Complaint and the Draft Complaint through the filing and worked through the public information bureaucracy in time to post the Draft Complaint within hours of its filing, all at the beginning of a holiday weekend. We know, for example, that one reporter had the Complaints by at least 5:48 Pacific Time PM on the filing date. Other media piggy-backed off that media entity's reporting, referencing that they got from that entity the Draft Complaint which, by then, was on the media company's web site.

38. The false allegations against Wallace and Street made "headlines around the world" according to Elle Magazine which linked to the Draft Complaint, as did many other media.

39. Not only did Lively or her agents provide the CRD and Draft Complaints to various media entities for out-of-court republication either directly or indirectly, but they were relied upon in a videotaped program that one media organization used to promote its upcoming article published on December 21, 2024. Metadata within the video demonstrates that the video was created prior to December 20, 2024 and made use of both the CRD and Draft Complaints.

---

[3] *See* Instructions for Obtaining a Right-to-Sue Notice, California Civil Rights Department, at 13 https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2024/09/CRD-Right-to-Sue_ENG.pdf.

25-51040.1793

40.     Despite listing ten violations of California and Federal law, and alleging a major social media astroturfing campaign, Lively later admitted she knew of no facts to support the allegations against Wallace or Street. Lively filed her "**Verified Petition For Rule 202 Deposition**" ("Texas Lawsuit") in Hays County, Texas against Wallace, alleging that Wallace was a "subcontractor" to a company called TAG and, on information and belief, it was "to assist them (sic) in their (sic) unlawful, retaliatory 'social combat' campaign … against Lively." The Texas Lawsuit conceded that Lively has no facts supporting the allegations she made against Wallace and Street in the Draft Complaint but that now, apparently under the threat of sanctions from one of Plaintiffs' attorneys, she sought to "investigate" the "scope" of Mr. Wallace's conduct.

41.     Lively's verified Texas Lawsuit is replete with judicial admissions that (i) "Wallace worked remotely from Dripping Springs, Texas …," (Texas Lawsuit, ¶16); (ii) "a substantial part of the events giving rise to the claims that [Lively] seeks to investigate—specifically, Mr. Wallace's work on the 'social manipulation' campaign—occurred in Hays County (Texas)," (*Id.* at ¶35); and (iii) "a substantial part of the underlying events that would give rise to the claims (against Wallace) being investigated occurred in Hays County and Mr. Wallace resides in Hays County," (*Id.* at ¶36).

42.     It also admits that Lively lacked "[t]he critical evidence relevant to Petitioner's potential claims, the specifics of the conduct by Mr. Wallace[.]" *Id.* at ¶48. So that is why she was bringing the Texas Lawsuit— "for [the] discrete and specific

Jed Wallace's Amended Complaint                                      Page **13** of **26**

purpose: to investigate the nature and scope of Mr. Wallace's work," (*Id.* at ¶37), the very thing she had already leaked to the press as factual assertions.

43.     On top of admitting that she did not have the factual and evidentiary basis for the claims against Plaintiffs, Lively knew that her timeline did not add up. Lively is very clear that she believes Plaintiffs were hired no earlier than August 8, 2024 (they were actually approached on August 7th but did not begin work until the 9th) and that even TAG was not engaged until August. But her own Draft Complaint shows negative sentiment towards her building in July. *See Id.* at ¶195. This fact alone should have put Lively on notice that her accusations were false, or at the least she was negligent for not inquiring.

44.     And it makes sense that she would lack that evidentiary and factual basis—that she would lack "the critical evidence" and the "specifics of the conduct by Mr. Wallace." *See Id.* at ¶48. Lively *knew* that Plaintiffs had not harassed her and she had no evidence that they retaliated or were guilty of any of her other claims.

45.     Again, in the Draft Complaint, Lively paints a nefarious picture that Wallace, as an employee of Street, participated in an astroturfing campaign that published false and negative statements about her or boosted comments that did so. But that's not what Wallace did.

46.     Wallace's job was to read, analyze, and assess all forms of media and trends taking place with respect to various issues. Wallace did this limited role as an employee of Street. And all these tasks were performed in Texas.

47.     This job was in line with Wallace's work generally with respect to all forms of media. Specifically, for the events related to Mr. Baldoni, Wallace's limited

job was to conduct analysis of all forms of media, analyze the sentiment of the coverage, and then provide updates on the observations. After passively observing the social media environment, Wallace saw an organic outpouring of support for Baldoni and the Film. Wallace's feeling, based on what he saw, was that no remedial actions needed be taken at that time, and that everyone should let the sentiment on social media unfold organically. In addition to observing that people on social media organically supported Mr. Baldoni, there appeared to be a dislike for Ms. Lively based on her tone-deaf promotion of the film. Therefore, Wallace's advice was not to do anything at that time and let the sentiment on social media continue to unfold organically.

48. Because that role was strictly passive, both the specific assertions in the Draft Complaint as well as its general thrust and gist are false. Plaintiffs never published, directly or indirectly, any information or content (negative or otherwise) regarding Lively.

49. Plaintiffs never seeded or promoted content that appeared to be authentic on social media platforms and internet chat forums about *It Ends With Us*, Wayfarer, Justin Baldoni, Blake Lively, Ryan Reynolds, or any of Lively's or Reynolds's businesses or family.

50. Plaintiffs have never asked or directed anyone to post about, comment on, or like any social media posts about *It Ends With Us*, Wayfarer, Justin Baldoni, Blake Lively, Ryan Reynolds, or any of Lively's or Reynolds's businesses or family. That makes each of the specific statements made in the Draft Complaint untrue. And taken together, Lively's gist or thrust of her Draft Complaint was untrue.

51.    The statements of fact, actual or implied, of and concerning Plaintiffs in the Draft Complaint are false, defamatory, made with either negligence or "actual malice" and have caused millions of dollars in reputational harm including both general and special damages through emotional harm (Wallace), actual damages and real and projected loss of business (Wallace and Street) in an amount that exceeds $1,000,000.

52.    Specifically, Wallace and Street's business model primarily relies on anonymity. Not to post negative social media or to weaponize a digital army for an untraceable digital social manipulation campaign, as Lively alleges. But to help ordinary people—and some famous—to receive treatment from a variety of attacks, some physical. In addition, Plaintiffs help some people and their families with their addictions by providing health plans and support.

53.    The false allegations of fact made with actual malice has meant that Wallace and Street have lost business.

54.    Worse than the economic toll is the assault on Wallace's emotional condition. Lively has blasted out in court filings in this case confidential health information about Wallace despite this information being sealed in the New York Case and in a redacted declaration, and in letters marked confidential: Wallace has suffered medical issues induced by Lively's actions. Wallace's stress began on December 20, 2024, when Plaintiffs' world was turned upside down from the maliciously leaked CRD Complaint and the Draft Complaint, which made totally false and fabricated allegations against Plaintiffs. Such physical manifestations are the strongest evidence of mental anguish damages.

55.     This factual statement section incorporates all of the factual allegations in the Introduction section of this amended complaint.

## IV.   JURISDICTION AND VENUE

56.     This Court has jurisdiction under 28 U.S.C. § 1332 because the matter exceeds the sum or value of $75,000, exclusive of interest and costs, and Wallace and Street as plaintiffs are not citizens of the same state as the sole defendant, Lively.

57.     This Court may exercise personal jurisdiction over Lively because she purposefully availed herself of the forum by filing the Texas Lawsuit where she sought to obtain evidence to defend this claim of defamation. Lively either knew that her defamatory claims were untrue (that Plaintiffs sexually harassed her) or had no evidence of the other claims, although she told the Texas judge she did not know the circumstances of Wallace's involvement.

58.     The defamation claims here have a nexus to the Texas Lawsuit because its filing and dismissal will demonstrate, in part, the fault element of the claim that is negligence and actual malice (for punitive damages). The Texas Lawsuit dismissal demonstrates a purposeful avoidance of the truth which has been, in appropriate cases, held to be evidence of actual malice and certainly negligence. The Texas Lawsuit also relates to the truth or falsity of the defamatory allegations because Lively admits that she has no evidence that they are true.

59.     In addition, her defamatory statements were aimed at Texas where both Plaintiffs reside and they undoubtably caused harm in Texas. Two mentions of Wallace in the Draft Complaint specifically state that he is based in Texas.

60.    In addition, Lively frequently visits Texas and did so in connection with promotion of the Film including at the Texas Book Bonanza where she appeared with the Texas author of the book the Film was based on, Colleen Hoover, and her other co-star (besides Baldoni), Brandon Sklenar.

61.    A news report of the appearance contained the following:



25-51040.1799

62.     During the appearance she spoke to hundreds of people as depicted here:



63.     Also during Lively's multi-day appearances in Texas, she promoted the Film. Discovery will reveal whether she made any additional defamatory remarks about Plaintiffs during these appearances. She did, however, attempt to leverage her brand of sparkling drinks—Betty Buzz— with an ad campaign "It Ends With Buzz" playing off the Film. Her take line for the drink was: "Every person with a mouth should drink this drink" and published a map with 43 locations between Waco and Austin where Betty Buzz could be purchased.

64.     Lively purposefully availed herself of the Texas forum by suing Wallace there, her defamatory accusations were directed at their conduct in Texas, and all of the damage suffered by Plaintiffs occurred in Texas. Furthermore, on information

Jed Wallace's Amended Complaint                                    Page **19** of **26**

25-51040.1800

and belief, additional defamatory statements about Plaintiffs were made by Lively at SXSW in Austin, Texas and later in Waco, and these form the basis, in part, of this suit.

65. Venue is proper because, as Lively alleges in her Rule 202 petition, "a substantial part of the underlying events that would give rise to the claims being investigated occurred in Hays County," part of the Austin Division of the Western District of Texas. *See In re Blake Lively*, Cause No. 2025-25-0200-DC (Hays County D. Ct. Jan. 21, 2025), at ¶36. Lively's defamatory statements were 100% directed at Texas, targeting Texas residents and were published in Texas. Her out-of-court publication of the CRD and Draft Complaints were directly published by her to the press and, to the extent they weren't, she could reasonably foresee that they would be republished around the world—but specifically in Texas. Finally, she made additional repeated defamatory comments in Texas during an appearance(s), which occurred, at least, after this lawsuit. Venue is proper here. *See* 28 U.S.C. § 1391(b)(2).

66. All of the factual statements in the preceding sections are incorporated in this section by reference.

## V. FIRST CAUSE OF ACTION
### (Defamation and Defamation Per Se)

67. The Draft Complaint and CRD Complaint which were published by Defendant were "of and concerning" Wallace and Street and falsely stated that they had engaged in ten illegal, including criminal, acts under state and federal law. It is

25-51040.1801

defamatory to falsely accuse someone of sexual harassment and retaliation for reporting the sexual harassment. The Defendant's publications, including identical or similar statements that she made in Austin, Texas and, upon information and belief, Austin and Waco, caused Plaintiffs damage. Defendant was at fault in publishing the defamatory statements because she did not act as a reasonably prudent publisher — that is, she was negligent as evidenced by her withdrawal of the Texas Lawsuit which would have revealed the truth.

68. Neither the Draft Complaint nor the CRD Complaint were privileged because, among other reasons, they were provided by the Defendant or her agents to third parties including many media outlets. Defendant knew or should have reasonably anticipated, indeed she hoped, that these allegations would be republished "around the world." As a result, Defendant is responsible for Republication Damages.

69. The statements of fact of and concerning Plaintiffs in the CRD and Draft Complaints are false and defamatory ("Statements"). They are made either negligently (if Plaintiffs are private figures which they are) or with "actual malice" (if Plaintiffs are public figures which they are not). The Statements have caused (both by the original publications and the republications around the world) great harm to Plaintiffs and such damages are presumed (if some or all of the Statements are defamatory per se) or per quod (if not per se) and, in any event, exceed $1,000,000. In considering whether the $75,000 jurisdictional amount has been reached the Court can take notice that many recent awards (Freeman and Moss v.

Giuliani, $148,000,000) or settlements (Dominion/Fox, $787,500,000; Trump/ABC $15,000,000) far exceed that amount.

70.     Although Lively is a public figure, Wallace and Street are not. Thus, Plaintiffs need prove only negligence to establish liability. However, Plaintiffs also seek punitive damages in an amount not less than $6,000,000, and to satisfy the evidentiary burden in establishing the right to such damages, they must demonstrate "actual malice"—that Lively either knew the allegations were false at the time she made them or she acted in reckless disregard of the truth—that is, she had a high degree of awareness of falsity and in fact entertained serious doubt about their truth.

71.     She acted with "actual malice" because she was the one claiming to have been harassed and retaliated against. She was the one who claimed she had a contract with Plaintiffs and yet there is no such contract, and Plaintiffs were nowhere near where the alleged harassment/retaliation took place. Lively knew this and it is not the case that she was harassed by some masked stranger who turned out to be the Plaintiffs. She knew (and knows) that they were not the harassers/retaliators but made these allegations anyway, leaked them to the press hoping they would be widely republished (which they were), but then excluded Plaintiffs from the Real Complaint (knowing they had nothing to do with the events depicted therein). When she had the opportunity to learn the true facts through her Texas Lawsuit, she intentionally turned away and dismissed the litigation.

72.     The defamatory statements are per se because they accuse Plaintiffs of conduct which is criminal. *See* Tex. Pen. Code Ann. §42.07. In addition, the defamatory statements injure Plaintiffs in their office, profession or occupation and are

Jed Wallace's Amended Complaint

thus *per se*, that is damages are presumed and Plaintiffs are entitled, at least, to nominal damages and the damage case may get to the jury without any proof of damage.

73.     All of the statements of facts from the previous sections are incorporated in this section by reference.

## VI.     CONCLUSION

74.     Sadly for Plaintiffs, they find themselves in the middle of this coast-to-coast, ginormous Hollywood litigation between two of America's leading film stars regarding events (which Plaintiffs had nothing to do with) purportedly occurring during filming of the movie *It Ends With Us* ("Film") and, thereafter, its marketing.

75.     The problem for Defendant, of course, is that Wallace has never met Lively (and certainly never harassed her), was never on the set of the Film (where the sexual harassment apparently occurred), and could not have investigated, prevented or remedied the claimed harassment, if it occurred, because, for one reason, he had no knowledge of it (and still doesn't). He certainly had no power to remedy it, as he was not and has never been her or Baldoni's (who he also never met) employer and did not retaliate against Lively for claiming he (Wallace) or anyone else sexually harassed her. Neither he nor Street ever contracted with her.

76.     Plaintiffs, therefore, respectfully request that this Court enter a final judgment and award damages for (i) Wallace's loss of reputation and emotional distress in the amount of at least $1,000,000 and punitive damages in an amount of at least $6,000,000, and (ii) Street's loss of reputation in an amount not less than $1,000,000, and punitive damages in the amount of at least $6,000,000, (iii) court

25-51040.1804

costs and for such further relief at law or in equity as to which Plaintiffs may be entitled.

Dated: April 25, 2025

Respectfully submitted,

JACKSON WALKER LLP

/s/ *Charles L. Babcock*
Charles L. Babcock
Texas Bar No. 01479500
Joel Glover
Texas Bar No. 24087593
Tori Emery
Texas Bar No. 24126228
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
cbabcock@jw.com
jglover@jw.com
temery@jw.com

Minoo Blaesche
Texas Bar No. 24075102
Carl C. Butzer
Texas Bar No. 03545900
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000
mblaesche@jw.com
cbutzer@jw.com

Matt Dow
Texas Bar No. 06066500
Katharine Lee Carmona
Texas Bar No. 00787399
Cody Lee Vaughn

Texas Bar No. 24115897
100 Congress Ave. Suite 1100
Austin, TX 78701
(512) 236-2000
mdow@jw.com
kcarmona@jw.com
cvaughn@jw.com

**ATTORNEYS FOR PLAINTIFFS**

25-51040.1806

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2025, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system.

/s/ Charles L. Babcock
Charles L. Babcock

## CERTIFICATE OF SERVICE

I certify that this document was filed with this Court via the Court's CM/ECF system on May 15, 2026, and that an electronic copy of it was served on counsel of record, as listed below, via the Court's CM/ECF system on the same date:

Michael J. Gottlieb
mgottlieb@willkie.com
Kristin Bender
kbender@willkie.com
Aaron E. Nathan
anathan@willkie.com
WILLKIE FARR &
   GALLAGHER LLP
1875 K Street
Washington, D.C. 20006
(202) 303-1245

Laura Lee Prather
laura.prather@haynesboone.com
Catherine L. Robb
catherine.robb@haynesboone.com
Michael J. Lambert
michael.lambert@haynesboone.com
Reid Pillifant
reid.pillifant@haynesboone.com
HAYNES AND BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
(512) 867-8400
(512) 867-8470 (fax)

*Counsel for Defendant-Appellee*

/s/ *Charles Lynde Babcock*
Charles Lynde Babcock