No. 25-51040

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

JED WALLACE; STREET RELATIONS, INCORPORATED,
*Plaintiffs-Appellants,*

v.

BLAKE LIVELY,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

---

# BRIEF OF APPELLEE

---

Michael J. Gottlieb
Kristin Bender
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1245

Esra A. Hudson
Stephanie A. Roeser
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000

Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
Reid Pillifant
HAYNES AND BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
(512) 867-8400

*Counsel for Defendant-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

No. 25-51040, *Wallace v. Lively*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Defendant-Appellee is Blake Lively.

2. Defendant-Appellee is represented in the Fifth Circuit by:

Michael J. Gottlieb
Kristin Bender
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1245

Esra A. Hudson
Stephanie A. Roeser
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000

Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
Reid Pillifant
HAYNES AND BOONE, LLP

98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
(512) 867-8400

3. Plaintiffs-Appellants are Jed Wallace and Street Relations, Inc.

4. Plaintiffs-Appellants are represented in the Fifth Circuit by:

Jeffrey L. Oldham
JACKSON WALKER LLP
100 Congress, Suite 1100
Austin, TX 78701
(512) 236-2000
(512) 236-2002 (fax)

Charles Lynde Babcock
Joel Robert Glover
JACKSON WALKER LLP
1401 McKinney Street
Houston, TX 77010
(713) 752-4200
(713) 308-4110 (fax)

Dated: August 14, 2026

/s/ *Laura Lee Prather*
Laura Lee Prather
Counsel for Defendant-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is unnecessary. The District Court's dismissal on personal jurisdiction grounds involves straightforward application of well-established law to undisputed facts. The briefs and record adequately present the issues, and oral argument will not significantly aid the decisional process. If the Court nevertheless sets this case for argument, Appellee requests the opportunity to participate.

## TABLE OF CONTENTS


STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................ 1

INTRODUCTION ........................................................................ 1

STATEMENT OF THE CASE ...................................................... 4

A. Factual Background. ............................................................ 4

1. Ms. Lively Files the CRD Complaint. ............................. 4

2. The Wallace Parties and Others Initiate a Lawsuit in California. .................................................... 8

3. Ms. Lively Commences New York Litigation and a Related Rule 202 Petition. .......................................... 9

B. Procedural Background. ...................................................... 11

C. The District Court's Decision. .............................................. 13

D. The Wallace Parties Appeal and the SDNY Grants Ms. Lively Fees and Costs Under California Civil Code Section 47.1. ......................................................................... 16

SUMMARY OF ARGUMENT ...................................................... 16

STANDARD OF REVIEW ........................................................... 20

ARGUMENT ............................................................................... 21

I. THE DISTRICT COURT PROPERLY ANALYZED PERSONAL JURISDICTION PURSUANT TO APPLICABLE LEGAL STANDARDS. ....................................... 23

A. The District Court Properly Accepted the Wallace Parties' Factual Allegations Regarding the Rule 202 Petition. ................................................................................ 24

B. The District Court Properly Evaluated Ms. Lively's Alleged Texas Contacts as a Whole. ..................................... 26

C. The District Court Applied the Proper Standard in Rejecting the Wallace Parties' Conclusory "Information and Belief" Allegations. ........................................................ 27

II. THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS AGAINST MS. LIVELY FOR LACK OF PERSONAL JURISDICTION. .................................................. 31

A. The Wallace Parties Failed to Establish That Ms. Lively Has Sufficient "Minimum Contacts" with the Forum. ........ 31

1. The CRD Complaint Was Not "Directed at Texas." ........ 32

2. The Rule 202 Petition Filed in Connection with the SDNY Action Does Not Establish the Requisite Minimum Contacts. ........ 38

3. The "Information and Belief" Allegations Do Not Establish Requisite Minimum Contacts........ 40

B. The Claims Do Not Arise Out of Ms. Lively's Limited Contacts With This Forum. ........ 43

C. The Exercise of Personal Jurisdiction Is Not Fair or Reasonable........ 46

III. THIS COURT MAY AFFIRM BASED ON THE ALTERNATIVE GROUND THAT TEXAS IS AN IMPROPER VENUE. ........ 49

CONCLUSION ........ 51

CERTIFICATE OF SERVICE........ 53

CERTIFICATE OF COMPLIANCE........ 54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allred v. Moore & Peterson*,
117 F.3d 278 (5th Cir. 1997) .......... 39

*Asahi Metal Indus. Co. v. Superior Ct. of Solano Cnty.*,
480 U.S. 102 (1987) .......... 48

*Asarco, Inc. v. Glenara, Ltd.*,
912 F.2d 784 (5th Cir. 1990) .......... 43

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
582 U.S. 255 (2017) .......... 45

*Bullion v. Gillespie*,
895 F.2d 213 (5th Cir. 1990) .......... 30

*Calder v. Jones*,
465 U.S. 783 (1984) .......... *passim*

*Chevron U.S.A. Inc. v. Env't Prot. Agency*,
45 F.4th 380 (D.C. Cir. 2022) .......... 49

*Clemens v. McNamee*,
615 F.3d 374 (5th Cir. 2010) .......... *passim*

*Combs v. Tex. Civil Rights Project*,
410 S.W.3d 529 (Tex. App. 2013) .......... 38

*Dalton v. R & W Marine, Inc.*,
897 F.2d 1359 (5th Cir. 1990) .......... 46, 47

*Daughtry v. Silver Fern Chem., Inc.*,
138 F.4th 210 (5th Cir. 2025) .......... 36

*Defense Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) .......... 36

*Elec. & Gas Tech., Inc. v. Universal Commc'n Sys., Inc.*,
2003 WL 22838719 (N.D. Tex. Nov. 24, 2003) ........................ 29, 30, 41

*Felch v. Transportes Lar-Mex SA DE CV*,
92 F.3d 320 (5th Cir. 1996)................................................................21

*Fielding v. Hubert Burda Media, Inc.*,
415 F.3d 419 (5th Cir. 2005)........................................................ *passim*

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)..................................................................... 43, 44

*Gault v. Yamunaji, L.L.C.*,
2009 WL 10699952 (W.D. Tex. Apr. 17, 2009) ...................................51

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019)......................................................... 39, 40

*Herman v. Cataphora, Inc.*,
730 F.3d 460 (5th Cir. 2013)........................................... 27, 33, 36, 37

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)...........................................................................22

*ITL Intern., Inc. v. Constenla, S.A.*,
669 F.3d 493 (5th Cir. 2012)...............................................................45

*Johnson v. TheHuffingtonPost.com, Inc.*,
21 F.4th 314 (5th Cir. 2021) ............................................ 22, 34, 43, 47

*Johnston v. Multidata Sys. Int'l Corp.*,
523 F.3d 602 (5th Cir. 2008)...............................................................21

*Lalla v. G&H Towing Co.*,
2019 WL 11626516 (W.D. Tex. July 26, 2019) ...................................51

*Libersat v. Sundance Energy, Inc.*,
978 F.3d 315 (5th Cir. 2020)...............................................................27

*McClintock v. Sch. Bd. E. Feliciana Par.*,
299 F. App'x 363 (5th Cir. 2008).................................................. 21, 49

*McFarlane v. Sheridan Square Press, Inc.*,
91 F.3d 1501 (D.C. Cir. 1996) .......... 42

*Metro Equip. & Rental Co., Inc. v. Tsurumi Mfg. Co., Ltd.*,
2022 WL 1491099 (W.D. Tex. May 10, 2022) .......... 30

*Moler v. Wells*,
18 F.4th 162 (5th Cir. 2021) .......... 49

*Nunes v. NBCUniversal Media, LLC*,
582 F. Supp. 3d 387 (E.D. Tex. 2022) .......... 30

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*,
310 F.3d 374 (5th Cir. 2002) .......... 22

*Nuttall v. Juarez*,
984 F. Supp. 2d 637 (N.D. Tex. 2013) .......... 51

*Pace v. Cirrus Design Corp.*,
93 F.4th 879 (5th Cir. 2024) .......... 45

*PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switz.)*,
260 F.3d 453 (5th Cir. 2001) .......... 39, 40

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001) .......... *passim*

*Paz v. Brush Engineered Materials, Inc.*,
445 F.3d 809 (5th Cir. 2006) .......... 20

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
688 F.3d 214 (5th Cir. 2012) .......... 21, 46, 49

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) .......... 34, 35

*RJ Mach. Co. v. Can. Pipeline Accessories Co.*,
2015 WL 5139295 (W.D. Tex. Aug. 31, 2015) .......... 38

*Roberts v. McAfee, Inc.*,
660 F.3d 1156 (9th Cir. 2011) .......... 42

*Salermo v. Hughes Watters & Askanase LLP*,
516 F. Supp. 3d 696 (S.D. Tex. 2021) .......... 20

*Sangha v. Navig8 ShipMgmt. Private Ltd.*,
882 F.3d 96 (5th Cir. 2018) .......... 20, 21, 30, 41

*Savoie v. Pritchard*,
122 F.4th 185 (5th Cir. 2024) .......... 20

*Seitz v. Envirotech Sys. Worldwide Inc.*,
513 F. Supp. 2d 855 (S.D. Tex. 2007) .......... 28

*Silverman v. Bookzone, Inc.*,
2005 WL 1902786 (N.D. Tex. 2005) .......... 28

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .......... 49

*Smilde v. Snow*,
73 F. App'x 24 (5th Cir. 2003) .......... 42, 43

*Texas v. Real Parties In Int.*,
259 F.3d 387 (5th Cir. 2001) .......... 38

*Tittle v. Kansas Geological Soc'y*,
2009 WL 10704726 (N.D. Tex. 2009) .......... 28, 41

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017) .......... 22

*Weldon v. Lilith Fund for Reprod. Equity*,
735 S.W.3d 702 (Tex. 2026) .......... 38

*Wien Air Alaska, Inc. v. Brandt*,
195 F.3d 208 (5th Cir. 1999) .......... 45

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
336 F.3d 375 (5th Cir. 2003) .......... 20

**Statutes**

28 U.S.C. § 1391(b)(2) .......... 21, 49, 50, 51

42 U.S.C. §§ 2000e to 2000e-17 .......... 6, 32

Cal. Civ. Code § 47.1 .......... 16

Cal. Gov. Code § 12940 .......... 6

**Other Authorities**

Fed. R. Civ. P. 8 .......... 50

Fed. R. Civ. P. 12 .......... 11, 13, 16, 19, 49

Fed. R. Civ. P. 26 .......... 40

Fed. R. Civ. P. 202 .......... *passim*

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the Texas district court correctly held that it lacks personal jurisdiction over Ms. Lively.

2. Whether, if the Wallace Parties sufficiently alleged personal jurisdiction, affirmance is warranted because venue is improper.

## INTRODUCTION

In August 2024, after Blake Lively privately reported sexual harassment connected to the film *It Ends With Us*, Wayfarer Studios and its executives recruited Wallace and Street Relations to implement a retaliatory "social/digital mitigation and remediation" response. This appeal arises from the Wallace Parties' tenuous attempt to impose liability on Ms. Lively in Texas for exposing their participation in the resulting "social media combat" plan to "bury" Ms. Lively's reputation.

The District Court below was presented with several threshold and merits defects in the First Amended Complaint, but it dismissed at the outset on the most fundamental one: the absence of personal jurisdiction over Ms. Lively, a nonresident of Texas with no meaningful connection to the forum. In reaching that decision, the District Court collectively

evaluated the Wallace Parties' asserted bases for personal jurisdiction between Ms. Lively and Texas—a Rule 202 petition filed and voluntarily nonsuited within fourteen days without service; background references to Mr. Wallace's Texas residence in a complaint filed with a California administrative agency alleging California law violations by California employers; and conclusory "information and belief" allegations that Ms. Lively made unspecified defamatory statements during visits to Texas—and correctly concluded that none adds up to sufficient jurisdictional contacts.

Unable to show that the District Court applied the wrong legal standards or ignored non-conclusory allegations, the Wallace Parties center their appeal on alleged "legal error" that amounts to nothing more than their dissatisfaction with the well-reasoned outcome. From there, through largely repetitious argument, they fault the District Court for declining to treat an unserved discovery vehicle as if it were extensive merits litigation, for recognizing that nationwide publication does not constitute purposeful direction toward Texas, and for declining to credit allegations the District Court deemed "speculation." None of these arguments identifies reversible error.

Instead, affirmance is warranted on multiple, independent grounds. First, the District Court applied the correct legal standards by accepting all non-conclusory factual allegations, assessing the asserted contacts collectively, and rejecting only those allegations too speculative to carry the Wallace Parties' jurisdictional burden (*see* Part I.A-C). Second, the First Amended Complaint fails to establish minimum contacts because the alleged defamation arises from a California administrative filing relating to conduct that Wallace previously swore was directed at California, not from any Texas-directed conduct. It fails relatedness because neither the Rule 202 petition nor the alleged Texas visits gave rise to the defamation claim. And it fails fairness because there is no constitutional basis to require a New York resident with only incidental Texas contacts unrelated to the Wallace Parties' claims to litigate a California-centered dispute in Texas (*see* Part II.A-C). Third, even if jurisdiction were proper, this Court may independently affirm on grounds evident below: that venue is improper in Texas, a forum that lacks *any* meaningful connection, let alone a substantial one, to the alleged events in this case (*see* Part III).

Due process and venue rules prevent this situation: an effort to force a non-resident defendant to defend herself in an attenuated forum that the allegations and sworn testimony do not support. This Court should affirm.

## STATEMENT OF THE CASE

### A. Factual Background.

#### 1. Ms. Lively Files the CRD Complaint.

Ms. Lively is an actress and entrepreneur who resides in New York. ROA.1789 ¶ 21. She starred in *It Ends With Us*, which Justin Baldoni directed and Wayfarer Studios—owned by Baldoni and a billionaire financier—produced and owns. ROA.1820, 1827-28 ¶¶ 8, 26. After Ms. Lively reported sexual harassment and misconduct on set by Baldoni and Wayfarer CEO Jamey Heath, a signed contractual rider established 17 protections to ensure a safe set, including a requirement that Baldoni, Heath, Wayfarer, and others not retaliate against Ms. Lively "for raising concerns or requesting safeguards," and that the non-retaliation provision applied at all times, "including during publicity and promotional work." ROA.1817, 1828-41 ¶¶ 1-3, 28-77.

As promotion for the Film began in the summer of 2024, Baldoni became concerned that Ms. Lively would speak publicly about the on-set

harassment and sought assistance from crisis-management professionals, including Melissa Nathan, The Agency Group PR LLC ("TAG"), Jennifer Abel, and Sarowitz, who promised to spend "$100 million" to ruin Ms. Lively's and her family's lives. ROA.1820, 1842-46 ¶¶ 8-9, 83, 89-103. TAG "first approached" Wallace and his company Street, which provides "crisis mitigation" services to high-profile clients, on August 7, 2024, "about assisting it in social/digital mitigation and remediation regarding Wayfarer." ROA.1789 ¶ 22. The Wallace Parties began work on the "project" on August 9, 2024. *Id.* ¶ 23. Street was incorporated in California in 2008 but converted to a Texas corporation on February 6, 2025—after the Wallace Parties filed this lawsuit. ROA.1788 ¶¶ 20, 2120, 2122.

On December 20, 2024, Ms. Lively filed an administrative complaint with the California Civil Rights Department as a necessary administrative prerequisite to initiating a federal lawsuit. ROA.1812-95. The CRD submission included the required intake form (the "CRD Form") and an attachment detailing the misconduct in the form of a civil

complaint (the "Attached CRD Complaint") (collectively the "CRD Complaint"). ROA.1812-95.[1]

The CRD Form identified ten respondents and stated that those respondents "engaged in *a variety of conduct* in violation of California Government Code section 12940 (the 'FEHA') and Title VII of the Civil Rights Act of 1964," including sexual harassment, retaliation, failure to investigate, prevent, and remedy harassment, and aiding and abetting harassment and retaliation. ROA.1812-14 (emphasis added). The summary description was prefaced in "and/or" alternative terms, making clear that not all of the summarized conduct was alleged against all respondents, and was followed by the statement "see attached for specific details." ROA.1814.

The Attached CRD Complaint includes specific factual allegations supporting Ms. Lively's claims. ROA.1812-95. Its nearly 50-paragraph Factual Background detailed the harassment Ms. Lively and others faced

[1] Appellants' Brief and the FAC define the CRD intake form as the "CRD Complaint" and the attachment to the CRD intake form as the "Draft Complaint." ROA.1783 ¶ 3. The attachment was not a "draft"—Ms. Lively submitted it to the CRD to provide "Additional Complaint Details." ROA.1813. To avoid confusion in terminology, Ms. Lively refers to the intake form as the "CRD Form," the attachment as the "Attached CRD Complaint," and the two collectively as the "CRD Complaint."

on set—none of which reference the Wallace Parties in any way—and the remaining 125 paragraphs addressed the retaliatory plan launched after production by Baldoni, Heath, and Wayfarer (the "Wayfarer Parties") with the assistance of TAG, Nathan, Abel, and the Wallace Parties. ROA.1827-41 ¶¶ 26-77. This included their detailed, coordinated, and "untraceable" effort to "bury" Ms. Lively, including by leveraging efforts on social media. ROA.1823, 1847-48 ¶¶ 14, 107.

Aside from the Wallace Parties' inclusion in the caption of the Attached CRD Complaint, Wallace's name appears in only seven paragraphs of the document, all relating to the retaliatory campaign, and Street is not mentioned at all. ROA.1824, 1859-61 ¶¶ 18-19, 138-39, 142, 146, 148. Five of the seven paragraphs quote documents reflecting verbatim references by TAG, Nathan, or Abel to "Jed" in their own correspondence, and the remaining two explain background on who Mr. Wallace is. *Compare* ROA.1824, 1859-61 ¶¶ 19, 138, 142, 146, 148, *with* ROA.1824 ¶ 18 ("They also retained subcontractors, including a Texas-based contractor named Jed Wallace"), ROA.1859 ¶ 139 ("Ms. Nathan's reference to 'Jed,' is a reference to Mr. Jed Wallace, an independent contractor based in Austin, Texas . . .").

### 2. The Wallace Parties and Others Initiate a Lawsuit in California.

The day after Ms. Lively filed the CRD Form, on December 21, 2024, *The New York Times* published an article reporting on the allegations entitled, 'We Can Bury Anyone': Inside a Hollywood Smear Machine. ROA.1784 ¶ 6.

Ten days later, the Wallace Parties—along with the other individuals and entities identified in the CRD Complaint—initiated a lawsuit against *The New York Times* in California state court, including based on assertions that the article defamed them by stating that "Plaintiffs orchestrated a retaliatory public relations campaign against Lively for speaking out about sexual harassment" and that they "waged an affirmative campaign to harm Lively" by planting news stories "to shape social media discourse." ROA.544 ¶ 7, 623 ¶ 136. The plaintiffs dismissed the California Complaint shortly thereafter, on February 3, 2025. Request for Dismissal, *Wayfarer Studios LLC, et al. v. The New York Times Company*, No. 24STCV34662 (Cal. Super. Ct., L.A. Cnty. Feb. 3, 2025).

### 3. Ms. Lively Commences New York Litigation and a Related Rule 202 Petition.

On December 31, 2024—the same day that the Wallace Parties filed suit against *The New York Times* in California—Ms. Lively initiated an action in the United States District Court for the Southern District of New York with a complaint nearly identical in substance to the Attached CRD Complaint, asserting federal and California state-law claims against the Wayfarer Parties, It Ends With Us Movie LLC, Nathan, TAG, and Abel ("NY Wayfarer Defendants"). *Lively v. Wayfarer Studios LLC, et al.*, No. 1:24-cv-10049, Dkt. 1 (the "Lively SDNY Complaint") ROA.2953, 4441-42.

On January 16, 2025, all the NY Wayfarer Defendants other than TAG ("NY Wayfarer Plaintiffs") filed a separate lawsuit in the Southern District of New York asserting seven causes of action, including based on the allegation that the CRD Complaint was "rife with lies and doctored 'evidence.'" *Wayfarer Studios LLC, et al., v. Lively et al.*, No. 1:25-cv-00049, Dkt. 1 ¶ 4 (together with the Lively SDNY Complaint, the "SDNY Action"). On January 31, 2025, the NY Wayfarer Plaintiffs amended their complaint to include *The New York Times* as a party. SDNY Action Dkt. 50.

On January 21, 2025, in connection with the SDNY Action, Ms. Lively filed a Rule 202 petition in Texas, seeking to obtain discovery from Wallace concerning his alleged role in the retaliatory campaign against her. ROA.2953, 4442. Fourteen days later, Ms. Lively nonsuited the Rule 202 petition without prejudice for reasons of judicial economy, before Wallace had been served or deposed. ROA.3458. Thereafter, on February 18, 2025, Ms. Lively named the Wallace Parties in the SDNY Action. ROA.1978, 2954-55, 4442, 4454.

The Wallace Parties moved to dismiss the claims against them in the SDNY Action and attempted to stay discovery pending resolution of their motion—a request that the New York court quickly rejected. SDNY Action Dkt. 309. In moving to dismiss on, *inter alia*, grounds of personal jurisdiction, the Wallace Parties argued that their conduct was not directed at New York: Wallace worked remotely from Texas and that none of his work was in or directed at New York, and Wallace swore that he considered its impact to only be in California. ROA.3466 ¶ 28, 3477. On November 5, 2025, the New York court granted the motion and dismissed the Wallace Parties for lack of personal jurisdiction. SDNY Action Dkt. 912. From June 10 through November 5, 2025, the Wallace

Parties were active participants in discovery in the SDNY Action. ROA.4362-64; SDNY Action Dkts. 426, 380, 380-1 at 2, 387 ¶ 10, 387-2 at 7, 390.

### B. Procedural Background.

The Wallace Parties filed this suit on February 4, 2025, asserting defamation against Ms. Lively arising from publication of the CRD Complaint, and seeking declaratory relief and anticipatory adjudication. ROA.12-21, 4443-44.

Ms. Lively filed her first Rule 12 motion to dismiss on April 7, 2025, after which the Wallace Parties filed their First Amended Complaint ("FAC") on April 25, 2025, resulting in the District Court denying Ms. Lively's first motion to dismiss without prejudice. *See* ROA.1-11, 976-1775, 1776-78, 1782-1807; 4/28/25 Text Order. The FAC abandoned the original request for declaratory relief and its request for an anticipatory adjudication, instead asserting a single claim for defamation and defamation per se. *Compare* ROA.12, 17-21 ¶¶ 1, 17-21, 24, *with* ROA.1782, 1801-04 ¶¶ 1, 67-73, 76. The FAC also added new factual allegations, including that the CRD Complaint was not publicly available online and that Ms. Lively allegedly gave one newspaper in New York

"exclusive access" to documents underlying its article. *Compare* ROA.1783-84, 1792-93 ¶¶ 3-6, 36-39, *with* ROA.13-14 ¶¶ 5-8. The FAC also added allegations concerning Ms. Lively's complaints in the SDNY Action, Ms. Lively's Rule 202 petition and its nonsuit, Ms. Lively's two alleged visits to Texas, and republication of coverage. ROA.1784-88, 1794-95, 1801-03 ¶¶ 7-16, 40-44, 57-65, 67, 71, ROA.14-17 ¶¶ 8-16, ROA.19 ¶ 22. In particular, the Wallace Parties identify two occasions in which Ms. Lively visited Texas (one after the lawsuit was filed), alleging on "information and belief," that she made or allowed "identical or similar statements" to those made in the Attached CRD Complaint while there. They alleged that Ms. Lively "never admitted that her statements were false" when confronted by a Texas resident during a March 2025 SXSW appearance in Austin, who said "Blake Lies" and referenced "Justice for Justin"; that she made unspecified "additional defamatory comments about Plaintiffs" at a hotel in Waco on the same visit; and that discovery might reveal whether she made any additional defamatory remarks while promoting the Film at the June 2024 Book Bonanza event in Texas. ROA.1787, 1799-1802 ¶¶ 14-15, 60-64, 67. No factual record supports these allegations. *See generally* ROA.2971-72, 4440-60.

The FAC also added more details about the Attached CRD Complaint's supposed defects and alleged defamatory meaning, but it removed the Wallace Parties' original allegation that the Rule 202 petition was "a transparent attempt to chill [ ] free speech rights," which would have supported a TCPA motion. ROA.1790-92 ¶¶ 27-34; ROA.1795-97 ¶¶ 45-54; ROA.15-16 ¶¶ 12-13; ROA.19-20 ¶¶ 22-23.

Ms. Lively filed her second motion to dismiss on May 19, 2025, seeking dismissal of the FAC for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6). ROA.4440, 4444. As discussed below, the District Court granted Ms. Lively's motion under Rule 12(b)(2) and dismissed the FAC without prejudice on November 12, 2025. ROA.4460.

### C. The District Court's Decision.

In granting Ms. Lively's motion to dismiss, the District Court began with personal jurisdiction. ROA.4449. The court evaluated each of Ms. Lively's alleged Texas contacts: Ms. Lively's Rule 202 petition, the alleged Texas effects of the CRD Form under *Calder*, and the FAC's "information and belief" allegations that Ms. Lively made or failed to correct statements while in Texas on two occasions. ROA.4449-50.

The District Court first determined that the unserved Rule 202 petition did not support that Ms. Lively purposefully availed herself of Texas or engaged in active litigation there. ROA.4451-52. Recognizing that a Rule 202 petition is "a request for discovery, not a claim, demand, or cause of action," nor "a 'civil action,'" the District Court "decline[d] to interpret Defendant's Rule 202 petition as 'seek[ing] affirmative relief' that subjects her to the state's personal jurisdiction." *Id.* The District Court also evaluated and rejected the Wallace Parties' non-binding cases on this point, as well as the claim that Ms. Lively had submitted herself to Texas jurisdiction by paying filing fees and hiring process servers in the state, finding instead that merely effectuating a petition was insufficient to support minimum contacts. ROA.4452-54 & n.1. The District Court likewise rejected the Wallace Parties' contention that the Rule 202 petition surrendered jurisdictional objections, observing that Ms. Lively did not litigate the merits but instead nonsuited the petition without serving Wallace after only fourteen days. ROA.4454.

The District Court next held that Ms. Lively's CRD Complaint did not support personal jurisdiction under *Calder*. ROA.4454-58. The court concluded that the Attached CRD Complaint's two references to Wallace

being based in Texas "served merely to supply background, biographical information," that the Wallace Parties did not allege Ms. Lively relied on Texas sources in preparing the CRD Complaint, and that the Wallace Parties failed to allege that Ms. Lively directed her actions toward Texas knowing the effects would be felt there. ROA.4457 ("[T]here is nothing to indicate that the article was targeting Texas readers as distinguished from readers in other states."). The court further found that the CRD Complaint "focused on events taking place outside of Texas." ROA.4457-58.

Last, the District Court rejected the Wallace Parties' "information and belief" allegations regarding Ms. Lively's visits to Texas as "speculation" insufficient to establish personal jurisdiction. ROA.4458-60. The court observed that the Wallace Parties had failed to present affidavits, interrogatories, depositions, oral testimony, or comparable proof supporting jurisdiction notwithstanding that the dispute had been litigated extensively in another court for nearly a year. ROA.4458-59.

Having collectively considered the allegations, the Wallace Parties' asserted bases for jurisdiction, and applicable jurisprudence, the District Court concluded that the Wallace Parties failed to establish that Ms.

Lively is subject to personal jurisdiction in Texas and granted Ms. Lively's motion to dismiss pursuant to Rule 12(b)(2). ROA.4459-60. The court did not reach Ms. Lively's alternative arguments for dismissal based on improper venue or failure to state a claim. ROA.4460.

### D. The Wallace Parties Appeal and the SDNY Grants Ms. Lively Fees and Costs Under California Civil Code Section 47.1.

The Wallace Parties filed their notice of appeal December 12, 2025 and filed Appellants' brief on May 15, 2026. ROA.4461-62; Dkt. 45 ("Br.").

While this appeal was pending, the parties to the SDNY Action achieved a court-approved settlement. SDNY Action Dkt. 1434. The Southern District of New York subsequently issued a decision holding the Wayfarer Parties and their agents responsible for Ms. Lively's attorneys' fees and costs under California Civil Code section 47.1, which shields individuals who speak out about sexual harassment, assault, or discrimination (including retaliation) from retaliatory defamation lawsuits when their statements are made in good faith and without malice. SDNY Action Dkt. 1440.

## SUMMARY OF ARGUMENT

The District Court correctly dismissed this action for lack of personal jurisdiction, and its decision should be affirmed. The Wallace

Parties fail to establish that the District Court erred in analyzing the only three proffered categories of alleged contacts between Ms. Lively and Texas—none of which, individually or collectively, establish the purposeful availment or direction required by due process.

*First*, the District Court properly credited all non-conclusory factual allegations and evaluated the alleged jurisdictional contacts in the aggregate to conclude that the Wallace Parties' First Amended Complaint fails to sufficiently allege personal jurisdiction. The Wallace Parties' criticisms of the District Court's deviation from "controlling standards" reflect, in actuality, their substantive disagreement with the court's conclusions, which are based on appropriate legal standards after accepting non-conclusory factual allegations. *See* Part I.A-C.

*Second*, the District Court correctly concluded that the Wallace Parties failed to allege personal jurisdiction over Ms. Lively. As the court concluded, the First Amended Complaint's allegations failed to demonstrate sufficient "minimum contacts." *See* Part II.A. Ms. Lively's Rule 202 petition—filed and nonsuited within fourteen days without service—was not a proceeding demonstrating personal availment and

falls far short of the extensive merits litigation required to establish jurisdiction through litigation conduct. *See* Part II.A.2.

The CRD Complaint also does not satisfy the *Calder* effects test. *See* Part II.A.1. That complaint was filed with a California administrative agency, alleged violations of California law by California employers, and focused on conduct occurring outside Texas. Two passing references to Wallace being "based in Texas" are biographical background, not a focal point. The Wallace Parties fail to allege that Ms. Lively relied on any Texas sources. Wallace's own sworn testimony in the New York litigation confirms that the "impact" of his work was directed exclusively at California. Nationwide publication of the resulting news coverage does not establish purposeful direction toward Texas. And the Wallace Parties' "information and belief" allegations—that Ms. Lively made unspecified defamatory remarks during two visits to Texas—are the kind of conclusory, unsupported assertions that courts in this Circuit routinely reject. *See* Part II.A.3; *see also* Part I.C. The alleged Texas visits, one of which occurred after this lawsuit was filed, cannot retroactively create personal jurisdiction that did not exist at the outset

of litigation. In any event, these allegations fail to provide detail beyond conclusory speculation.

*Third*, even if the Wallace Parties could establish minimum contacts, their claims do not "arise out of or relate to" any Texas contact. *See* Part II.B. Their defamation claim is based on the CRD filing *in California*, and neither the unserved Rule 202 petition nor Ms. Lively's alleged visits to Texas give rise to or are connected to that claim. Nor would exercising jurisdiction be fair or reasonable given Ms. Lively's non-resident status and the limited interest Texas has in adjudication of this dispute as compared to California, where the Wallace Parties filed suit addressing similar issues. *See* Part II.C.

Even if this Court were to conclude that the exercise of personal jurisdiction is appropriate here, the Court may nevertheless affirm dismissal on grounds apparent from the record below. *See* Part III. This case warrants dismissal for improper venue pursuant to Rule 12(b)(3) because the Wallace Parties' claim for defamation does not arise from "a substantial part of the events or omissions" that occurred in this district.

The Court should reach the same conclusion as the District Court and affirm the dismissal below.

## STANDARD OF REVIEW

"Where there is no dispute of relevant facts, the exercise of personal jurisdiction is a question of law subject to de novo review." *Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024).

When a district court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. *Sangha v. Navig8 ShipMgmt. Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Id.* (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)). While "information and belief" allegations are permissible in some circumstances, they must be supported by "related information or facts . . . pleaded to establish that belief." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003); *Salermo v. Hughes Watters & Askanase LLP*, 516 F. Supp. 3d 696, 710 (S.D. Tex. 2021). Critically, "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac*

*Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996).

Under 28 U.S.C. § 1391(b)(2), venue is proper only if "a substantial part of the events or omissions giving rise to the claim" occurred in the judicial district. *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 365 (5th Cir. 2008). Where, as here, the District Court did not reach the venue issue, this Court may nonetheless affirm on the alternative ground of improper venue if it is supported by the record. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012).

**ARGUMENT**

The Wallace Parties have failed to establish that Ms. Lively is subject to the District Court's jurisdiction. A federal court in Texas may exercise personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute extends to the defendant's conduct and (2) exercising jurisdiction comports with due process. *Sangha*, 882 F.3d at 101. Because the Texas long-arm statute extends to the limits of federal due process, the inquiry collapses into a single due process analysis. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th

Cir. 2008). Due process requires that the exercise of jurisdiction be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

General jurisdiction is not satisfied here.[2] This Court must therefore determine whether the Wallace Parties have established specific jurisdiction by evaluating:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir. 2002), abrogated on other grounds, Water Splash, Inc. v. Menon, 581 U.S. 271 (2017).*

As to the first prong, the Wallace Parties must show that Ms. Lively's "ties to the forum" were "ties that 'the defendant *h[er]self'* purposefully forged." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (emphasis in original).

---

[2] Br. at 22; *see also* ROA.1789 ¶ 21 (Ms. Lively is a "citizen of New York.").

Under *Calder v. Jones*, 465 U.S. 783 (1984), courts may exercise jurisdiction over a defendant who purposely directs tortious conduct toward a forum state and the "effects" of that conduct connect the defendant to the forum. *Calder*, 465 U.S. at 789. In other words, jurisdiction is not triggered simply because a plaintiff may feel the effects of a defendant's conduct in the forum state. To satisfy *Calder*, a plaintiff must show that the forum, or the defendant's activities in the forum, is the "focal point" of the defamatory publication *and* that the defamatory publication relied on sources in the forum state. *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (citing *Calder*, 465 U.S. at 788-89); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005).

## I. THE DISTRICT COURT PROPERLY ANALYZED PERSONAL JURISDICTION PURSUANT TO APPLICABLE LEGAL STANDARDS.

The Wallace Parties identify only three categories of contacts between Ms. Lively and Texas: (1) her Rule 202 petition, filed and nonsuited within fourteen days without service; (2) the CRD Complaint, filed in California with a California state agency; and (3) generally unspecified statements allegedly made during visits to Texas, pleaded solely "on information and belief." Br. at 32-33; ROA.1798-1801 ¶¶ 57-65.

The Wallace Parties contend that in concluding that none of these contacts—individually or collectively—establishes purposeful availment or purposeful direction of tortious conduct toward Texas, the District Court committed "at least three interrelated errors." Br. at 28. First, they claim the court improperly "weigh[ed] jurisdictional evidence" rather than crediting their Rule 202 petition allegations. *Id.* at 28-29. Second, they argue the court evaluated Ms. Lively's Texas contacts "in isolation" rather than "in their aggregate." *Id.* at 31-35. Third, they contend the court improperly rejected their "information and belief" allegations, which should have been accepted as true. *Id.* at 35-39. Each argument fails.

### A. The District Court Properly Accepted the Wallace Parties' Factual Allegations Regarding the Rule 202 Petition.

The Wallace Parties' argument that the District Court failed to credit their "clearly Texas-directed allegations" regarding Ms. Lively's short-lived Rule 202 petition, Br. at 28-29, fundamentally mischaracterizes the District Court's analysis.

The District Court accepted every factual allegation in the FAC, describing them verbatim. *See* ROA.4442-43, 4454. Having accepted

those facts, the court reached a legal conclusion: that a Rule 202 petition—a pre-suit discovery device that is "not a claim, demand, or cause of action"—does not constitute "seeking affirmative relief" sufficient to subject Ms. Lively to personal jurisdiction. ROA.4451-52. The court's analysis was extensive—citing, analyzing, or distinguishing ten separate cases—and was directed entirely at the legal significance of the undisputed facts, not the facts themselves. *See* ROA.4450-54.

Tellingly, despite asserting that the District Court failed to credit certain factual allegations, the Wallace Parties cannot even identify which allegations the District Court supposedly rejected. Indeed, they concede they are unable to pinpoint "[w]hatever the specific reasons for the district court's decision." Br. at 29. Their actual complaint is that the court agreed "with Lively that her Rule 202 petition was 'not an "original action"' and was 'not otherwise litigate[d] extensively on the merits.'"[3] Br. at 28-29 (quoting ROA.4451). That is a challenge to the court's *legal* conclusion, not its treatment of factual allegations—and it is addressed on the merits *infra* Part II.A.2.

[3] Ms. Lively addresses the Wallace Parties' challenge to the District Court's legal conclusions regarding the Rule 202 petition *infra* Part II.A.2.

### B. The District Court Properly Evaluated Ms. Lively's Alleged Texas Contacts as a Whole.

The Wallace Parties' claim that the District Court "legally erred simply because it undisputedly never considered the whole" of Ms. Lively's Texas contacts "in their aggregate," Br. at 34, similarly misrepresents the record. The Wallace Parties do not claim the court failed to consider any given category of alleged contacts—nor could they, as the court addressed the Rule 202 petition, the CRD Complaint under *Calder*, and the "information and belief" allegations in turn. ROA.4450-59. Again, their chief complaint is with the District Court's ultimate finding—that the Wallace Parties' allegations do not amount to minimum contacts.

But zero plus zero is still zero. The aggregate analysis requirement does not transform jurisdictionally tenuous contacts into legally sufficient ones. Where, as here, the District Court concluded that each category of contact carries *no jurisdictional weight*—the Rule 202 petition is not an "original action," the CRD Complaint's focal point was not Texas, and the "information and belief" allegations are conclusory—combining them changes nothing. ROA.4451-52, 4457-59.

The Wallace Parties' belief that a proper "aggregate analysis" would have "credited a mosaic of interconnected, forum-directed conduct," Br. at 34, reflects a fundamental misunderstanding of the law. An aggregate analysis does not require a court to *credit* contacts as supporting jurisdiction; it requires only that the court *consider* them together. The District Court did precisely that—and still found personal jurisdiction lacking. *See, e.g.*, *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 320-21 (5th Cir. 2020) (evaluating plaintiff's alleged contacts in totality and finding each insufficient to support specific personal jurisdiction); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465-66 (5th Cir. 2013) (same).

### C. The District Court Applied the Proper Standard in Rejecting the Wallace Parties' Conclusory "Information and Belief" Allegations.

The Wallace Parties argue that the District Court erred in rejecting the FAC's "information and belief" allegations concerning Ms. Lively's presence in Texas, contending that their allegations were sufficiently detailed and that Ms. Lively failed to submit controverting evidence. Br. at 35-39. They are wrong on both accounts.

The FAC's allegations mirror allegations that courts in this Circuit have rejected as conclusory. *Compare* ROA.1787 ¶¶ 14 ("On information

and belief while in Austin, Lively made additional defamatory remarks concerning Plaintiffs.”), 15 (“On information and belief, Lively made additional defamatory comments about Plaintiffs, purposefully availing herself of the Texas forum.”), *with Panda Brandywine*, 253 F.3d at 869 (no prima facie showing where personal jurisdiction rested solely on an “information and belief” assertion that the defendant knew plaintiffs were Texas residents); *Tittle v. Kansas Geological Soc'y*, 2009 WL 10704726, at *6 (N.D. Tex. 2009) (no personal jurisdiction where petition alleged “Defendant made defamatory statement about him which caused him damages” but did “not set out or provide details about the alleged defamatory statements”), *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F. Supp. 2d 855, 863 (S.D. Tex. 2007) (rejecting conclusory affidavit assertions of Texas ties “with no additional facts”), *and Silverman v. Bookzone, Inc.*, 2005 WL 1902786, at *5 (N.D. Tex. 2005) (rejecting conclusory assertions regarding visits to Dallas as unsupported and unrelated to cause of action). The Wallace Parties provided no detail about what was allegedly said—instead relying on vague references to Ms. Lively's allegations in the Attached CRD Complaint and insisting that her failure to publicly refute those allegations when allegedly

confronted by a stranger who referenced "Justice for Justin" (without, apparently, even referring to the Wallace Parties at all) while in Texas is somehow enough. ROA.1787 ¶ 14.

Given this, the District Court correctly concluded that the Wallace Parties' allegations regarding Ms. Lively's visits to Texas were conclusory, observing that they had "fail[ed] to provide the Court with any greater level of detail beyond the speculation that 'on information and belief,' Defendant repeated the defamatory remarks while in Texas." ROA.4459. The court's conclusion correctly reflects the fundamental proposition that conclusory assertions cannot support a *prima facie* finding of personal jurisdiction. *See Panda Brandywine*, 253 F.3d at 869; *Elec. & Gas Tech., Inc. v. Universal Commc'n Sys., Inc.*, 2003 WL 22838719, at *5 (N.D. Tex. Nov. 24, 2003) ("[u]nproffered 'information' and unsubstantiated 'belief' . . . is clearly insufficient").[4]

---

[4] The Wallace Parties are incorrect that the "information and belief" allegations in *Elec. & Gas Tech., Inc. v. Universal Commc'n Sys., Inc.*, 2003 WL 22838719 (N.D. Tex. Nov. 24, 2003) addressed only that the defendant had made "material contacts in Texas." Br. at 36. Rather, the plaintiffs also alleged "on information and belief" that defendant "came to Dallas" to perform "due diligence for a proposed acquisition," including an affidavit to support its assertions. *Elec. & Gas Tech., Inc.*, 2003 WL 22838719 at *4. The court concluded that this level of detail in

The Wallace Parties attempt to shift the burden to *Ms. Lively*, claiming she "had every opportunity to, but did not, submit a declaration or other evidence controverting the Wallace Parties' allegations." Br. at 38. But Ms. Lively was not required to controvert conclusory jurisdictional allegations.[5] *See Panda Brandywine Corp.*, 253 F.3d at 868-69; *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 397 (E.D. Tex. 2022). Rather, it was the Wallace Parties' "burden to establish personal jurisdiction when faced with a motion to dismiss." ROA.4459 (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)); *Sangha*, 882 F.3d at 101. They could have supported their allegations through "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* Instead, despite months of active participation in the SDNY Action—during which they

---

"unproffered 'information' and unsubstantiated 'belief'" allegations was insufficient to establish personal jurisdiction. *Id.* at *5. The Wallace Parties failed to even submit an affidavit.

[5] The Wallace Parties' cases on this point, which relate to parties' conflicting sworn assertions, are irrelevant. *See Bullion v. Gillespie*, 895 F.2d 213, 218 (5th Cir. 1990) (district court erred in failing to resolve in plaintiff's favor "factual conflicts contained in the affidavits"); *Metro Equip. & Rental Co., Inc. v. Tsurumi Mfg. Co., Ltd.*, 2022 WL 1491099, at *8 (W.D. Tex. May 10, 2022) (declining to credit defendants' unsworn affidavit over non-conclusory jurisdictional allegations in complaint).

engaged in document production, fact discovery, depositions, and numerous discovery-related filings[6]—the Wallace Parties chose to provide nothing more than bare "information and belief" assertions. Their attempt to blame the District Court for declining to credit these conclusory allegations should be rejected.

## II. THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS AGAINST MS. LIVELY FOR LACK OF PERSONAL JURISDICTION.

The Wallace Parties maintain that, when analyzed under the proper "controlling standard," personal jurisdiction is clearly established. Br. at 23-55. They are incorrect. As the District Court correctly concluded, the FAC fails to establish sufficient minimum contacts to warrant the exercise of personal jurisdiction over Ms. Lively in Texas. Moreover, even if the Wallace Parties could establish minimum contacts—which they cannot—their claims do not "arise out of or relate to" Ms. Lively's Texas contacts, and exercising jurisdiction would not be fair or reasonable.

### A. The Wallace Parties Failed to Establish That Ms. Lively Has Sufficient "Minimum Contacts" with the Forum.

---

[6] *See* SDNY Action Dkts. 309, 380, 387, 390, 426 (reflecting discovery participation by the Wallace Parties in the SDNY Action from June through July 2025).

#### 1. The CRD Complaint Was Not "Directed at Texas."

The Wallace Parties argue that the CRD Complaint was directed at Texas because it referenced the Wallace Parties as "Texas-based" and because Ms. Lively allegedly "knew her acts of publishing and disseminating" the CRD Complaint "would harm the Wallace Parties in Texas." Br. at 40. Under *Calder* and Fifth Circuit jurisprudence, specific jurisdiction in a defamation action requires that the forum state be the "focal point" of the publication's subject matter and that the defendant relied on sources located in the forum state. *Clemens*, 615 F.3d at 380; *Fielding*, 415 F.3d at 426. The CRD Form fails both prongs.

First, Texas is not the focal point of the CRD Form. The CRD Complaint was filed with a *California* administrative agency, alleging violations of *California* law (FEHA and Title VII) by *California* employers. ROA.1812-95. The Wallace Parties argue that Ms. Lively "made Texas the focal point" of her accusations by making two references that the Wallace Parties are "Texas-based" and "based in Austin, Texas." Br. at 3. But the Attached CRD Complaint's passing references to Wallace being "based in Texas" are precisely the kind of "background,

biographical information" that this Circuit has held insufficient under *Calder*. ROA.4457 (citing *Fielding*, 415 F.3d at 425).

Likewise, the CRD Form accused ten respondents of California law violations arising from conduct in connection with a film produced by a California-based production company and those respondents' retaliatory acts thereafter. ROA.1812-14. That two of the respondents happened to be based in Texas does not transform the complaint into a Texas-focused publication any more than *Fielding*'s references to the plaintiff's Texas connections made the German publications Texas-focused. *See Fielding*, 415 F.3d at 426-27; *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465-66 (5th Cir. 2013) (no personal jurisdiction where statements "did not refer to specific actions taken in Louisiana").

The CRD Form also was not directed at Texas through its publication or republication. The Wallace Parties allege that, after the CRD Complaint was filed in California, it was shared with *The New York Times*—a New York-based newspaper—and republished "around the world." ROA.1784, 1788, 1789 ¶¶ 6, 18, 24. But as the District Court observed, "there is nothing to indicate that the article was targeting Texas readers as distinguished from readers in other states." ROA.4457.

As courts have regularly found, nationwide publication does not establish purposeful direction toward a jurisdiction. *See Revell v. Lidov*, 317 F.3d 467, 473, 475 (5th Cir. 2002); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 319-20 (5th Cir. 2021) (finding no jurisdiction when published story did not "target[ ] Texas in some way"); *see also Panda Brandywine*, 253 F.3d at 870 (rejecting subjecting "a nonresident defendant . . . to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts . . .").

Moreover, Wallace himself swore under oath in the New York litigation that he "only considered the impact of [his] work to be in California" and that he "thought [he] was doing business and providing [his] services to individuals in California." ROA.3466 ¶ 28. The Wallace Parties cannot credibly claim that the CRD Complaint was "aimed at Texas" when their own principal testified that the very conduct described in the CRD Complaint was California-directed.

Evidently at a loss for specific examples of how the central allegations against Ms. Lively connect to Texas, the Wallace Parties rely on a statement in the dismissed Rule 202 petition that "a substantial part

of the events giving rise to the claims arose in Texas." Br. at 41. But as noted, Mr. Wallace has since disputed that assertion in a sworn affidavit and, more importantly, the petition is not the publication giving rise to the Wallace Parties' claims. ROA.3466 ¶ 28; Br. at 18-19 ("The CRD and Draft Complaints are the core of the defamation claims here.").

Second, the Wallace Parties do not allege—nor can they—that Ms. Lively relied on any Texas sources in preparing the CRD Complaint. ROA.4457. This failure is independently fatal. The Wallace Parties urge this Court to disregard the sources prong because Ms. Lively is "the very person who claims personal knowledge" of the alleged conduct. Br. at 42-43. But this Court has never adopted a blanket exception to the source requirement; instead, it has repeatedly embraced it. *See, e.g.*, *Clemens*, 615 F.3d at 380; *Revell*, 317 F.3d at 474 & n.48; *see also Fielding*, 415 F.3d at 426-27 (declining jurisdiction even where publisher acknowledged use of Texas sources).

While the Wallace Parties rely on the *Clemens* dissent's reasoning to claim that the "source" requirement is irrelevant here, that minority-opinion reasoning is not controlling. Br. at 27. Nor does its logic—that the source requirement need not apply to "eyewitness" testimony—apply

here. The CRD Complaint was not personal testimony and could have, but did not—and was not alleged to—rest on Texas-based sources or research. *Contra Clemens v. McNamee*, 615 F.3d 374, 384 n.5 (5th Cir. 2010). The Wallace Parties' other cases also do not stand for the proposition that the "sources" prong is rendered unnecessary. Instead, those cases reflect instances in which, unlike here, the tortious conduct entered and occurred in the forum state under traditional minimum-contacts analysis. *See Defense Distributed v. Grewal*, 971 F.3d 485, 495-96 (5th Cir. 2020) (finding minimum contacts based on purposeful-availment principles where letter physically directed to Texas, rather than based on *Calder* as the primary framework); *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 216 (5th Cir. 2025) (acknowledging "sources" prong and finding jurisdiction in relation to falsified documents physically directed to Texas in fraud case).

Although the Wallace Parties attempt to distinguish the applicable precedent of *Fielding*, *Clemens*, and *Herman*, these cases only emphasize that personal jurisdiction is lacking here. As the Wallace Parties explain, in *Fielding*, "the references to Texas" in the publication giving rise to the alleged defamation "were purely background." Br. at 47. The same holds

true for the CRD Complaint here. While the Wallace Parties emphasize the activities in *Fielding* that "all occurred in Germany and Switzerland," Br. at 47, personal jurisdiction was unsupported there because Texas was not the "focal point" of the story. *Fielding*, 415 F.3d at 426-27 (observing, contrary to the Wallace Parties' description and unlike in this case, that the relevant articles were circulated in Texas and relied on Texas sources). So too here, with publication and re-publication of the CRD Complaint in national press.

Similarly, in *Clemens*, the alleged defamatory statements "concerned non-Texas activities," and in *Herman*, the statements "did not refer to specific actions" taken in the forum state. Br. at 48-49. As in *Clemens* and *Herman*, the CRD Complaint addresses allegations of conduct taken or directed outside Texas, specifically in California or New York. *See* ROA.3466 ¶¶ 28-29. Texas is only mentioned in Ms. Lively's CRD Complaint as background, and it is not the "locus of the alleged conduct." Br. at 48.

### 2. The Rule 202 Petition Filed in Connection with the SDNY Action Does Not Establish the Requisite Minimum Contacts.

The Wallace Parties argue that Ms. Lively's Rule 202 petition—filed on January 21, 2025, and nonsuited fourteen days later without service—demonstrates purposeful availment of Texas. Br. at 29-31, 40-41. The District Court properly rejected this argument.

A Rule 202 petition is "only an investigatory tool" and "pre-litigation method of obtaining evidence," not an original action. *Texas v. Real Parties In Int.*, 259 F.3d 387, 394 (5th Cir. 2001); *Weldon v. Lilith Fund for Reprod. Equity*, 735 S.W.3d 702, 706 n.5 (Tex. 2026). "Courts hold consistently that a Rule 202 petition is a request for discovery, not a claim, demand, or cause of action." *RJ Mach. Co. v. Can. Pipeline Accessories Co.*, 2015 WL 5139295, at *5 (W.D. Tex. Aug. 31, 2015); *Combs v. Tex. Civil Rights Project*, 410 S.W.3d 529, 534 (Tex. App. 2013) ("We cannot agree that a rule 202 petition is itself a 'suit,' . . ."). Given this, the District Court correctly "decline[d] to interpret Defendant's Rule 202 petition as 'seek[ing] affirmative relief' that subjects her to the state's personal jurisdiction." ROA.4452.

The Wallace Parties attempt to characterize the Rule 202 petition as an exercise of judicial power by emphasizing Ms. Lively's payment of filing fees, hiring of Texas counsel, and use of process servers. Br. at 40-41. But as the District Court recognized, these are merely "means of effectuating the Rule 202 petition, which the Court has already found to be insufficient to subject Defendant to the Court's personal jurisdiction." ROA.4454 n.1. Filing fees and process servers do not transform a pre-suit discovery tool into an original action or otherwise support jurisdiction. *See Allred*, 117 F.3d at 287 (service of process in Mississippi in support of lawsuit elsewhere deemed insufficient to support exercise of personal jurisdiction in Mississippi).

Ms. Lively also did not litigate the Rule 202 petition at all, much less extensively on the merits. It was pending for only fourteen days and was nonsuited before Wallace was served. ROA.4454. No hearing occurred and no deposition was taken. ROA.4442-43, 4454; *In re Blake Lively*, No. 25-0200-DCF (Tex. Dist. Ct. Hays Cty. 2025). This falls far short of the extensive merits litigation required to establish purposeful availment through litigation conduct. *See PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switz.)*, 260 F.3d 453, 459-61 (5th Cir. 2001);

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541, 543 (5th Cir. 2019) (when a defendant has "never initiated an original action in Texas," a plaintiff "must still satisfy the standard minimum-contacts analysis").

The Wallace Parties try to distinguish *PaineWebber* and *Halliburton* on the grounds that those defendants never "initiated" proceedings in the forum. Br. at 30. But the distinction cuts against them: in both cases, the defendants *actually participated* in Texas litigation far more extensively than Ms. Lively did here—yet still were found not subject to jurisdiction. *See Halliburton*, 921 F.3d at 540-41 (moving for a stay, filing a third-party complaint, and serving Rule 26 disclosures insufficient); *PaineWebber*, 260 F.3d at 460-61 (specially appearing and filing motions insufficient). Ms. Lively's filing and immediate nonsuit of a pre-suit discovery petition—without even effectuating service—cannot constitute purposeful availment.

### 3. The "Information and Belief" Allegations Do Not Establish Requisite Minimum Contacts.

The Wallace Parties' remaining basis for personal jurisdiction rests on allegations made solely "on information and belief" that Ms. Lively made unspecified defamatory statements while visiting Texas in 2024

and 2025. ROA.1787, 1799-1801 ¶¶ 14-15, 60-64. The District Court properly rejected these allegations as insufficient. ROA.4458-59.

First, the FAC alleges that "on information and belief while in Austin, Lively made additional defamatory remarks concerning Plaintiffs," ROA.1787 ¶ 14, and that "on information and belief, Lively made additional defamatory comments about Plaintiffs, purposefully availing herself of the Texas forum." ROA.1787 ¶ 15. These allegations identify no specific statements, no time, and no content.

As the District Court concluded, they are precisely the type of "[u]nproffered 'information' and unsubstantiated 'belief'" that courts have found "clearly insufficient" to establish personal jurisdiction. *Elec. & Gas Tech.*, 2003 WL 22838719, at *5; *see also Tittle v. Kansas Geological Soc'y*, No. 3:08-CV-1908-O, 2009 WL 10704726, at *6 (N.D. Tex. Apr. 15, 2009) (no personal jurisdiction where petition alleged defendant "made defamatory statement about him which caused him damages" without any specifics); *Sangha,* 882 F.3d at 102 (affirming no

personal jurisdiction where the allegations "merely amount to 'vague and overgeneralized assertions' of contacts" with the forum state).[7]

Second, the SXSW "silence" allegation—that Ms. Lively "never admitted that her statements were false" when confronted by a person stating "Blake Lies" and "referencing 'Justice for Justin'"—is not a statement at all (or, for that matter, a statement even related to Wallace or Street). Silence in the face of a stranger's confrontation is not a "publication" or "republication" of defamatory material. The Wallace Parties cite no authority for the proposition that a failure to retract constitutes an independent act of defamation giving rise to personal jurisdiction. *See McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996) (plaintiff "presents no authority . . . , nor are we aware of any, for the proposition that a publisher may be liable for defamation because it fails to retract a statement . . ."); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167-68 (9th Cir. 2011).

[7] As discussed *supra* Part I.C, the Wallace Parties' failure to support these allegations with any evidence—despite extensive discovery available in the parallel SDNY Action—underscores their conclusory nature. They could have sought jurisdictional discovery in this case or submitted affidavits based on knowledge acquired in the SDNY Action. They did neither.

Third, these allegations are independently insufficient because personal jurisdiction is "determined at the outset of litigation and [is] not affected by subsequent events." *Smilde v. Snow*, 73 F. App'x 24, 26 (5th Cir. 2003); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990) ("[T]he relevant time for determining jurisdiction is the filing of the complaint . . . ."). The Wallace Parties filed this lawsuit on February 4, 2025. ROA.1801 ¶ 65. The bulk of Ms. Lively's alleged Texas contacts occurred in March 2025 and thereafter—*after* this suit was filed. Events postdating the complaint cannot retroactively create personal jurisdiction. *Smilde*, 73 F. App'x at 26.

### B. The Claims Do Not Arise Out of Ms. Lively's Limited Contacts With This Forum.

Even if the Wallace Parties could establish minimum contacts—which they cannot—they must also demonstrate that their claims "arise out of or relate to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021); *Johnson*, 21 F.4th at 317-18. The District Court did not address this jurisdictional requirement, having already concluded that the FAC failed to sufficiently plead minimum contacts. Br. at 51. Nevertheless, the Wallace Parties fail to satisfy it.

The Wallace Parties' defamation claims are based on the privileged CRD Complaint filed with a California administrative agency. ROA.1801-04 ¶¶ 67-73. Their other asserted Texas contacts—the Rule 202 petition and Ms. Lively's visits to Texas—do not give rise to, and are unrelated to, their claims. If Ms. Lively had never filed the Rule 202 petition, the Wallace Parties' defamation claims would be identical. ROA.2963. Likewise, the claims would be unchanged regardless of Ms. Lively's Texas visits, because the alleged defamation stems from the CRD filing, not from anything said at Book Bonanza, at SXSW, or in Waco.

The Wallace Parties invoke *Ford*'s "relate to" standard to argue that a but-for causal test is inappropriate. Br. at 49-51. But *Ford* does not eliminate the requirement of a meaningful connection between the forum contacts and the claims. Instead, it requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence involving the defendant that takes place within the State's borders." 592 U.S. at 352; *id.* at 362 ("In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum"). The Wallace Parties' defamation claims arise from and relate to a California filing allegedly shared with

New York media—not anything that occurred in Texas, and especially not the Rule 202 petition (initiated in support of the SDNY Action) or Ms. Lively's two visits to the State for unrelated press or personal reasons. *See* ROA.1783-85, 1789-93 ¶¶ 3-7, 22-39.

The Wallace Parties' reference to *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) provides a strong contrast. *See* Br. at 33. In that case, the defendant made in-person visits in which he obtained information that he later used against plaintiff directly related to the conduct at issue. *Id.* at 214. Here, the Wallace Parties have not alleged that Ms. Lively gathered information in Texas, nor any specific details about her supposed statements while there, which, as alleged, are too conclusory to be related to the Wallace Parties' claim.

In sum, there is no non-conclusory alleged activity or occurrence involving Ms. Lively that takes place within Texas's borders that is connected to the defamation claim. This failure is fatal. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 265 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue"); *Pace v. Cirrus Design Corp.*,

93 F.4th 879, 902 (5th Cir. 2024); *ITL Intern., Inc. v. Constenla, S.A.*, 669 F.3d 493, 500 (5th Cir. 2012).

### C. The Exercise of Personal Jurisdiction Is Not Fair or Reasonable.

Even if the Wallace Parties could establish the first two prongs of the specific jurisdiction test, exercising jurisdiction over Ms. Lively would not be fair or reasonable. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361, 1364 (5th Cir. 1990). While the District Court did not reach this prong, and the Wallace Parties contend that Ms. Lively "forfeited" the issue by not briefing it below, Br. at 52-53, that argument fails. The fairness inquiry is a constitutional requirement, and this Court may affirm on any ground supported by the record. *See Pervasive Software Inc.*, 688 F.3d at 232; *see also* Dkt. 42 at 7 (addressing three-part test including "fair and reasonable" prong). The record supports affirmance on this ground as well.

Each of the relevant factors—(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the

several States in furthering fundamental substantive social policies, *Dalton*, 897 F.2d at 1363—weighs against jurisdiction here.

Ms. Lively is a New York resident with no ongoing ties to Texas. Forcing her to litigate in Texas—when the underlying dispute has been extensively litigated in New York and the operative conduct (i.e., the Attached CRD Complaint) occurred in California—would impose an unreasonable burden.

Moreover, Texas's interest in this dispute is minimal. The CRD Complaint concerned California law violations arising from a California-based production, and Wallace himself acknowledged that the "impact" of his work was directed at California. ROA.3466 ¶ 28. California—where the complaint was filed, the privileges arose, and the conduct at issue primarily occurred—has the most significant relationship to this controversy. While Texas has a general interest in protecting its residents from tortious injury, that interest is substantially diminished where, as here, the operative conduct occurred entirely outside the state and the plaintiff's own sworn testimony confirms the California locus of his work. *Id.* Thus, exercising jurisdiction in Texas would not further any legitimate Texas interest and would instead enable the Wallace Parties

to forum-shop into a jurisdiction with no meaningful connection to their claims. *See Johnson*, 21 F.4th at 320 ("a state cannot use a defendant's forum contacts—even purposeful ones—to invent jurisdiction over claims that do not relate to or arise from those contacts").

The Wallace Parties' interests in convenient and effective relief are not uniquely served by a Texas forum. By contrast, they were active participants in the Southern District of New York litigation—engaging in document production, fact discovery, and motion practice—demonstrating their ability to litigate in forums outside Texas. ROA.4215-16. They also demonstrated their readiness to litigate in California by filing suit there against *The New York Times* based on an article reporting on the CRD Complaint. *See Wayfarer Studios LLC v. New York Times Co.*, No. 24STCV34662 (Cal. Super. Ct., L.A. Cnty. filed Dec. 31, 2024).

Last, a Texas forum also does not serve the interstate judicial system's interest in efficient resolution or the shared interests of the states in furthering fundamental social policies. Permitting litigation in Texas—where parallel suits have been filed and resolved in California and New York—would waste judicial resources and risk inconsistent

outcomes. *See Asahi Metal Indus. Co. v. Superior Ct. of Solano Cnty.*, 480 U.S. 102, 113-14 (1987).

## III. THIS COURT MAY AFFIRM BASED ON THE ALTERNATIVE GROUND THAT TEXAS IS AN IMPROPER VENUE.

Dismissal for improper venue is also appropriate pursuant to Rule 12(b)(3); *see Chevron U.S.A. Inc. v. Env't Prot. Agency*, 45 F.4th 380, 385 (D.C. Cir. 2022) (courts may dismiss on venue grounds without addressing personal jurisdiction); *accord Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (non-merits dismissal for forum non conveniens appropriate without addressing jurisdiction); *Moler v. Wells*, 18 F.4th 162, 166 n.7 (5th Cir. 2021) (addressing venue at outset is appropriate). Although the District Court resolved this case on personal jurisdiction grounds without reaching Ms. Lively's alternative arguments, ROA.4460, this Court may affirm on any ground supported by the record. *See Pervasive Software Inc.*, 688 F.3d at 232.

Texas is an improper venue because the Wallace Parties' claim for defamation does not arise from "a substantial part of the events or omissions" that occurred in this district. ROA.1801 ¶ 65 (asserting venue under 28 U.S.C. § 1391(b)(2)). The Wallace Parties' claim—based on the

CRD Complaint—arose in California where the alleged defamatory conduct occurred, not from events that occurred in Texas. *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 365 (5th Cir. 2008) (under § 1391(b)(2), "venue is proper only if 'a substantial part of the events or omissions giving rise to the claim' occurred in the [ ] District").

The Wallace Parties cannot rely on a few information and belief statements for purposes of venue because these conclusory allegations violate Rule 8 and fail to state any cognizable claim arising from that conduct. And, even if that were not the case, the "substantial" part of the activities from which the Wallace Parties' claim arises is the CRD Complaint, not unspecified statements that they added to the FAC solely to attempt to manufacture jurisdiction and venue in a state and judicial district that have nothing to do with their claims. Nor can they satisfy § 1391(b)(2) in this case by claiming a "substantial part of the underlying events" Ms. Lively sought to investigate in the Rule 202 petition occurred in Texas, because their claim for defamation arises from the CRD Complaint, not from the filing of a Rule 202 petition. ROA.1801 ¶ 65; Br. at 18-19 ("The CRD and Draft Complaints are the core of the defamation claims here.").

Further, where the Wallace Parties conducted their business—i.e., the location where Wallace participated in the retaliatory campaign against Ms. Lively—is irrelevant to the venue analysis because actions "taken by a plaintiff do not support venue under § 1391(b)(2)." *See Lalla v. G&H Towing Co.*, 2019 WL 11626516, at *4 (W.D. Tex. July 26, 2019). Even if the Wallace Parties felt injury in Texas, that would not make it a proper venue. *Id.* (quoting *Gault v. Yamunaji, L.L.C.*, No. A-09-CA-078-SS, 2009 WL 10699952, at *5 (W.D. Tex. Apr. 17, 2009) ("the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district")); *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013); *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010). Dismissal is therefore also warranted on venue grounds.

## CONCLUSION

The Court should affirm the District Court's dismissal of the Wallace Parties' claims against Ms. Lively.

Respectfully submitted,

/s/ *Laura Lee Prather*
Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
Reid Pillifant
HAYNES AND BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
(512) 867-8400

Michael J. Gottlieb
Kristin Bender
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1245

Esra A. Hudson
Stephanie A. Roeser
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000

*Counsel for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, I electronically transmitted this Brief of Appellee to the Clerk of the Court of the Fifth Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Laura Lee Prather*
Laura Lee Prather

## ECF CERTIFICATION

I hereby certify that (i) required privacy redactions have been made pursuant to 5TH CIR. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5TH CIR. R. 25.2.1; (iii) the document has been scanned for viruses using the most recent version of Windows Defender and is free of viruses; and (iv) the document will be maintained in paper form for three years after the mandate or order closing the case issues, per 5TH CIR. R. 25.2.9 and 5TH CIR. ECF Filing Standards E(2).

Dated: August 14, 2026

/s/ *Laura Lee Prather*
Laura Lee Prather

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that:

1. This brief complies with the word limit of FED. R. APP. P. 32(a)(7)(B) because this document contains 9,839 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), and 5th Cir. R. 32.2.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

Dated: August 14, 2026

/s/ *Laura Lee Prather*
Laura Lee Prather