No. 25-51040

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

JED WALLACE; STREET RELATIONS, INCORPORATED,

*Plaintiffs-Appellants,*

v.

BLAKE LIVELY,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Western District of Texas, Austin Division

# REPLY BRIEF OF APPELLANTS


Jeffrey L. Oldham
JACKSON WALKER LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (fax)

Charles Lynde Babcock
Joel Robert Glover
JACKSON WALKER LLP
1401 McKinney Street
Houston, Texas 77010
(713) 752-4200
(713) 308-4110 (fax)
cbabcock@jw.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Table of Authorities .......... ii

Introduction .......... 1

Argument .......... 4

I. The district court wrongly dismissed the Wallace Parties' claims for lack of specific personal jurisdiction over Lively .......... 4

A. Lively's Texas-directed contacts satisfy the minimum-contacts requirement .......... 5

1. The district court's minimum-contacts analysis certainly cannot stand .......... 5

2. Lively has sufficient minimum contacts under Texas law .......... 14

B. Lively's relatedness contentions lack merit .......... 25

C. Exercising jurisdiction here is fair and reasonable, and Lively forfeited any argument to the contrary .......... 27

II. Venue is proper in the Western District of Texas because a substantial part of the events occurred there .......... 30

Conclusion .......... 33

Certificate of Service .......... 35

Certificate of Compliance .......... 36

# TABLE OF AUTHORITIES

## Cases

*Allred v. Moore & Peterson*,
117 F.3d 278 (5th Cir. 1997) .......... 9, 20, 21

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .......... 13

*Asarco, Inc. v. Glenara, Ltd.*,
912 F.2d 784 (5th Cir. 1990) .......... 24

*Bibbs v. Molson Coors Beverage Co. USA*,
616 F. Supp. 3d 606 (N.D. Tex. 2022) .......... 27

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
240 F. App'x 612 (5th Cir. 2007) (per curiam) .......... 30

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 28

*Calder v. Jones*,
465 U.S. 783 (1984) .......... *passim*

*Carmona v. Leo Ship Mgmt., Inc.*,
924 F.3d 190 (5th Cir. 2019) .......... 22

*Daughtry v. Silver Fern Chem., Inc.*,
138 F.4th 210 (5th Cir. 2025) .......... 16

*In re Deepwater Horizon*,
934 F.3d 434 (5th Cir. 2019) .......... 20

*Defense Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) .......... 16

*Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*,
430 F.2d 38 (5th Cir. 1970) .......... 23

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 26, 27

*FTC v. Educare Ctr. Servs., Inc.*,
414 F. Supp. 3d 960 (W.D. Tex. 2019) ........................................ 22

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) ........................................ 19, 20

*Hardy v. Scandinavian Airlines Sys.*,
117 F.4th 252 (5th Cir. 2024) ........................................ 27

*Hawbecker v. Hill*,
88 F. Supp. 3d 723 (W.D. Tex. 2015) ........................................ 31, 32

*Huff v. Pharr*,
748 F.2d 1553 (11th Cir. 1984) ........................................ 8, 21

*Innova Hosp. San Antonio, Ltd. P'ship. v. Blue Cross & Blue Shield of Ga., Inc.*,
892 F.3d 719 (5th Cir. 2018) ........................................ 13

*Johnston v. Multidata Sys. Int'l Corp.*,
523 F.3d 602 (5th Cir. 2008) ........................................ 24

*Metro Equip. & Rental Co. v. Tsurumi Mfg. Co.*,
2022 WL 1491099 (W.D. Tex. 2022) ........................................ 14

*Mid-America Tablewares, Inc. v. Mogi Trading Co.*,
100 F.3d 1353 (7th Cir. 1996) ........................................ 9

*PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)*,
260 F.3d 453 (5th Cir. 2001) ........................................ 18, 19, 20

*Praetorian Specialty Ins. Co. v. Auguillard Constr. Co.*,
829 F. Supp. 2d 456 (W.D. La. 2010) ........................................ 24

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ........................................ 8, 9, 17

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) ........................................ 28

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 13

*Stone v. Shafran*,
641 F. Supp. 3d 1344 (S.D. Fla. 2022) .......... 17

*Stripling v. Jordan Prod. Co.*,
234 F.3d 863 (5th Cir. 2000) .......... 22

*SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours and Co.*,
578 F. Supp. 3d 511 (S.D.N.Y. Jan. 4, 2022) .......... 13

*Wien Air Alaska, Inc. v. Brandt*,
195 F.3d 208 (5th Cir. 1999) .......... 16

*XMission, L.C. v. PureHealth Rsch.*,
105 F.4th 1300 (10th Cir. 2024) .......... 28

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) .......... 24

**Statute**

28 U.S.C. § 1391(b)(2) .......... 31

## INTRODUCTION

This Texas case ensued after appellee Blake Lively published false and defamatory accusations about the Texas-based plaintiffs-appellants, emphasizing their Texas location and that their alleged conduct occurred in Texas, and then she invoked a Texas court's jurisdiction (and hired Texas lawyers and process servers) to investigate the same accusations. These Texas contacts, among others detailed in the Wallace Parties' opening brief, readily establish specific personal jurisdiction under settled precedent. The district court erred in ruling to the contrary, and Lively's response brief fails to squarely confront the fundamental defects in that court's jurisdictional analysis.

Three points still stand out. *First*, the district court failed to credit fully Lively's purposeful invocation of a Texas court and related Texas contacts and her sworn judicial admissions, including admitting that "a substantial part of the events giving rise to the claims that [Lively] seeks to investigate . . . occurred in Hays County, [Texas]." Instead, the court summarily concluded that Lively's Rule 202 petition was not an "original action" or "litigate[d] extensively on the merits," and dismissed these allegations based on inapposite caselaw, rather than considering Lively's

invocation of a Texas court and processes as part of the full range of forum contacts. Lively's attempt to sidestep those contacts is entirely unavailing. *Second*, Lively repeats the district court's erroneous divide-and-conquer approach, defending an isolated review of contacts that conflicts with Fifth Circuit precedent requiring courts to assess all the forum contacts together. *Third*, Lively embraces the court's dismissive treatment of the Wallace Parties' detailed, unrebutted information-and-belief allegations, insisting that they needed evidentiary support from discovery conducted in separate litigation (involving different parties and claims) while excusing Lively from controverting those allegations.

Properly applying settled law, Lively's Texas-directed conduct establishes the minimum contacts needed to support specific personal jurisdiction. She defamed a Texas resident and Texas business, stressing in her statements—not merely as "background" information but as substantive accusations of wrongdoing—that the Wallace Parties engaged in various activities *from Texas*. Shortly after publishing those false and defamatory statements, Lively filed a verified Rule 202 petition in Texas state court through Texas counsel to obtain evidence from a Texas resident concerning those same false statements. She emphasized

again the alleged Texas misconduct and swore that Hays County, Texas was where "a substantial part of the events giving rise to the claims that [she] s[ought] to investigate" happened. Lively now highlights that the Rule 202 petition went unserved, but that wasn't for lack of trying: she contracted with Texas process servers and authorized seven attempts to serve Wallace at his private Texas residence. And Lively's subsequent in-state visits—detailed by the Wallace Parties' uncontroverted allegations—further evidence her purposeful contacts with the forum.

A defendant cannot deliberately target a forum, invoke its courts and legal protections, and then disavow those contacts when sued there for claims relating to those same forum contacts. Lively's web of Texas-directed conduct and contacts compel a finding of specific personal jurisdiction.

Lively alternatively contests venue. Even if the Court reaches this alternative argument, it fails for the same reason: it ignores the Texas-centered conduct, contacts, and effects that connect this dispute to the forum. Venue is proper in the Western District of Texas because a substantial part of the events giving rise to the Wallace Parties' claims occurred there.

The Court should reverse and hold that the district court has personal jurisdiction over the Wallace Parties' claims. The Court should remand or alternatively reject Lively's alternative venue argument, and in all events remand for further proceedings.

## ARGUMENT

### I. The district court wrongly dismissed the Wallace Parties' claims for lack of specific personal jurisdiction over Lively.

Contrary to Lively's attempt to defend Judge Ezra's dismissal ruling, his jurisdictional analysis rested on three interrelated errors: it refused to consider Lively's Texas lawsuit contacts as counting in the minimum-contacts analysis based on a legal conclusion about Rule 202 petitions; it considered each of her contacts in isolation rather than in the aggregate as required; and it imposed a heightened evidentiary standard to reject (improperly) the Wallace Parties' detailed, uncontroverted information-and-belief allegations. The court's errors in assessing these contacts—individually and collectively—warrant reversal. Properly assessing all these forum contacts in the aggregate, they are sufficient to establish specific personal jurisdiction over Lively. Lively's efforts to deny that the Wallace Parties' claims arise out of, or *at least* are related to, those contacts, distorts the law and the contacts. And Lively is both

late and mistaken in contending that exercising jurisdiction here would be unfair or unreasonable. The Court should reverse.

### A. Lively's Texas-directed contacts satisfy the minimum-contacts requirement.

#### 1. The district court's minimum-contacts analysis certainly cannot stand.

Lively paints a picture of a district-court opinion that considered all the alleged Texas activities as forum contacts in the aggregate and simply found for Lively on these facts. Lively.Br.24-31. But any fair reading of the opinion below tells a different story. In multiple ways, the district court failed to conduct the aggregate analysis that this Court's precedent requires. The court's distortion of both the record and the law led it to reject or fail to fully consider key contacts that, viewed together, establish purposeful direction and availment.

***<u>First</u>***, the district court wrongly declined to count Lively's Texas-lawsuit contacts as forum contacts to be considered alongside others, instead mistakenly concluding merely—as a legal matter—that these contacts *alone* don't give rise to personal jurisdiction based on the asserted nature of Rule 202 petitions and the fact that it was not served. ROA.4450-54. The court never mentioned the Texas-lawsuit contacts

again, failing to weigh them as part of the overall aggregate of Texas contacts. ROA.4454-60. As the Wallace Parties explained, the court was wrong about Rule 202 petitions *and* how these contacts matter in the minimum-contacts analysis. Wallace.Parties.Br.28-31.

In response, Lively argues in conclusory fashion that the district court properly accepted "every factual allegation" by the Wallace Parties and simply reached the "legal conclusion" that a Rule 202 petition is not an original action, does not seek affirmative relief, and here was not litigated extensively on the merits. Lively.Br.24-25. Yet that does not address the Wallace Parties' complaint: that the court reversibly erred by failing to consider Lively's Texas-lawsuit contacts in the required *aggregate* minimum-contacts analysis, based on its (erroneous) legal conclusion and the statement that this means the Texas-lawsuit contacts *alone* do not "subject[] [Lively] to the Court's personal jurisdiction." ROA.4450-54. Sure, the court *said* a lot about its "legal conclusion." Lively.Br.25. But that all addressed the wrong issue. Any such legal conclusion, even if correct, did not excuse the need to give the Texas-lawsuit activities some weight in the overall minimum-contacts analysis. Tellingly, Lively cites *no* legal authority to the contrary.

Contrary to Lively's conclusory arguments, the district court's order confirms that the court gave no jurisdictional weight to the Wallace Parties' detailed allegations about Lively's verified Rule 202 petition, including her sworn judicial admissions and related Texas contacts. That was key to the decision below, especially to get around Lively herself *swearing* in the Rule 202 petition that "a substantial part of the events giving rise to the claims that [Lively] seeks to investigate"—*i.e.*, the same false claims Lively published in the CRD and Draft Complaints—"occurred in Hays County, [Texas]." ROA.3511. The court's entire analysis of the Texas-lawsuit forum contacts instead turned on whether a Rule 202 petition qualifies as an "original action" or involves extensive merits litigation. And after answering that (incorrect) question, the court simply held that *these lawsuit-related contacts* (by themselves) do not give rise to personal jurisdiction.

Moreover, the district court's analysis about Rule 202 petitions was itself flawed. The court relied on cases in which personal jurisdiction was claimed over non-resident defendants based solely on their involvement as non-initiating defendants—while continuously objecting to personal jurisdiction. *See* Wallace.Parties.Br.30-31. Here, *Lively* initiated her

Rule 202 proceeding and related activities in Texas. ROA.1785-86, 1794-95, 3382-83, 3385, 3511.

The district court erred by failing to accept as true and consider the Wallace Parties' uncontroverted allegations about Lively's Texas-lawsuit contacts, including her admission about the centrality of Texas contacts, "as part of the full range of [her] contacts with the forum." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002); *see also Huff v. Pharr*, 748 F.2d 1553, 1555 (11th Cir. 1984) (considering defendant's participation in prior litigation in the forum as part of minimum-contacts analysis and finding personal jurisdiction over defendant in subsequent litigation that "involved a claim uniquely connected with the defendant's previous forum-related activities").

***Second***, the district court improperly compartmentalized Lively's Texas contacts rather than viewing them in the aggregate. Lively claims the court considered her contacts collectively, Lively.Br.26-27, but that is again belied by its opinion. The court treated the "Rule 202 Petition," the "Calder Effects Test" (analyzing solely the CRD and Draft Complaints), and the "Information and Belief[] Statement[s]" as separate categories and rejected each in isolation, *never* considering them collectively.

ROA.4450-60. Lively jests that "zero plus zero is still zero," Lively.Br.26, but the court never held that any of these contacts amount to "zero," instead isolating each set of contacts and concluding *as to each* that it *alone* does not subject Lively to personal jurisdiction. ROA.4450-60. That approach cannot be squared with the requirement to conduct the minimum-contacts analysis in view of *all* forum contacts weighed as a whole. *See also supra* pp. 5-8 (Rule 202 contacts) & *infra* pp. 11-14 (information-and-belief allegations); *Revell*, 317 F.3d at 473.

Importantly, the district court's approach also conflicts with the rule that *Calder* "effects" must be assessed as part of the defendant's relevant forum contacts. *See Allred v. Moore & Peterson*, 117 F.3d 278, 287 (5th Cir. 1997); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1361-62 (7th Cir. 1996).

The two Fifth Circuit decisions that Lively relies on only reinforce that the controlling standard demands considering a non-resident defendant's contacts in the aggregate. *See* Lively.Br.27. In *Libersat v. Sundance Energy, Inc.*, the Court considered the contacts of various defendants, respectively, in a case that did not involve a claim for defamation. 978 F.3d 315, 320-21 (5th Cir. 2020). For one defendant, the

Court considered the contacts in the aggregate but concluded they did not relate to the plaintiff's claims, *id.*—a prong the district court here never reached, *see* ROA.4449-60. For the other defendants, the Court found no purposeful availment in Louisiana where the defendants acquired a lease from a Texas company for mineral rights in Texas, the documents were recorded in Texas, Texas law governed, and the primary activities occurred in Texas (with contract administration done in Colorado). *Libersat*, 978 F.3d at 322. The alleged Louisiana contacts, including royalty checks sent to the plaintiff landowner in Louisiana, were nothing more than the fortuitous result of the landowner residing there. *Id.* And the Court rejected the *Calder* effects argument, finding *Calder* inapplicable because the communications concerned a contract dispute and the only intentional tort alleged—conversion—requires the exercise of personal jurisdiction in the forum state in which the wrongful exercise of dominion and control over another's property occurs. *Id.* at 322-23. Contrary to all this, the district court in this case never analyzed and weighed all the contacts together.

Likewise in *Herman v. Cataphora, Inc.*, the Court found no personal jurisdiction under *Calder* because the complained-of statement "never

mentioned [the forum state] explicitly or implicitly" and "did not refer to specific actions taken in Louisiana." 730 F.3d 460, 464-66 (5th Cir. 2013). That is in sharp contrast to here. Neither *Herman* nor *Libersat* supports isolating Lively's contacts and considering them each in a vacuum; rather, they confirm that the analysis turns on the totality and nature of the forum-related conduct alleged.

***Third***, the district court erred in rejecting the Wallace Parties' information-and-belief allegations based on a heightened standard that the law does not support. Lively contends that the court "applied the proper standard" when it discarded these allegations as "conclusory," but in doing so relies on cases the Wallace Parties already distinguished in their opening brief—or others similarly distinguishable. Lively.Br.20, 27-30; *see* Wallace.Parties.Br.36-38.

For example, in *Seitz v. Envirotech Sys. Worldwide Inc.*, the plaintiff's entire jurisdictional showing was an unsigned, undated statement and a two-paragraph affidavit asserting—without supporting detail—that a Nevada corporate defendant "sold one or more" products in Texas, "appointed at least one manufacturer's representative" in Texas, and "advertised" in trade journals "circulated within" Texas. 513

F. Supp. 2d 855, 860-61 (S.D. Tex. 2007). The court found these allegations insufficient because they provided "no details or support"—nothing on when, where, to whom, or under what circumstances any sale, appointment, or advertisement occurred. *Id.* at 862-63. That is a far cry from the detailed, factual allegations here. Wallace.Parties.Br.35-39.

Lively's reliance on *Silverman v. Bookzone, Inc.* is even further off base. There, the district court rejected jurisdictional allegations imputing to the defendant company an individual's visits to Dallas, noting that the individual was identified only as the defendant's registered agent for service and that the plaintiff provided no other information about the individual or her role in the company. 2005 WL 1902786, at *4 n.3 (N.D. Tex. Aug. 9, 2005).

Because the Wallace Parties' allegations are plainly sufficient, Lively resorts to advancing a heightened burden mandating evidentiary support (just as the district court wrongly applied), Lively.Br.30-31, but none of her cases support this. The *prima facie* standard does not require evidentiary proof at the early, pre-discovery stages of litigation—much less from discovery in *different* (SDNY) litigation involving *different* parties and claims. Rather, courts routinely accept jurisdictional

allegations made on information and belief when the supporting facts are "peculiarly within the possession and control of the defendant." *See, e.g., SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours and Co.*, 578 F. Supp. 3d 511, 533 n.6 (S.D.N.Y. Jan. 4, 2022) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 920 (S.D. Cal. 2020); *see also Innova Hosp. San Antonio, Ltd. P'ship. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (adopting Second Circuit's formulation in *Arista Records* that "*Twombly* plausibility standard…does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant") (citation modified).

The Wallace Parties' allegations are easily sufficient under all the caselaw, including that cited by Lively. Rather than reciting bare jurisdictional conclusions or unsupported claims about unspecified contacts, the Wallace Parties alleged the specific cities, events, locations, and circumstances of Lively's in-person Texas contacts—even apart from her other contacts seeking out the Texas forum. The additional details Lively demands, Lively.Br.28-29, are the types of facts peculiarly within

*her* possession and control, and precisely why pleading on information and belief is appropriate at the early stages of litigation. *See, e.g.*, *Metro Equip. & Rental Co. v. Tsurumi Mfg. Co.*, 2022 WL 1491099, at *8 (W.D. Tex. 2022). The district court erred by transforming the *prima facie* inquiry into a heightened evidentiary standard and dismissing factual allegations that Lively never controverted. ROA.4459.

#### 2. Lively has sufficient minimum contacts under Texas law.

Properly considered in the aggregate under the governing legal framework, Lively's Texas activities and other contacts satisfy the minimum-contacts threshold. Her conduct readily shows a purposeful direction towards the Texas forum and a purposeful availment of it.

***First***, Lively's false and defamatory statements about the Wallace Parties in her CRD and Draft Complaints were directed at Texas. Lively's principal response is that these statements—about a Texas resident and Texas business and their alleged Texas-based activities—cannot support Texas jurisdiction over her because Texas "is not the focal point" of those statements. Lively.Br.32-33. She says the focal point was California, where the CRD and Draft Complaints were submitted. But Lively confuses the place where a defendant acts and the forum toward

which she directs the conduct. Under *Calder*, what matters is not the location from which the defamatory statements are made but where the defendant "aimed" those statements—or tortious conduct—and where the brunt of the injury was felt. *Calder v. Jones*, 465 U.S. 783, 787 (1984).

Lively's repeated reliance on Wallace's declaration from unrelated New York (SDNY) litigation fares no better. *E.g.*, Lively.Br.34. There, Wallace submitted a declaration in support of the Wallace Parties' motion to dismiss for lack of personal jurisdiction there—something Lively did not do here. Wallace's declaration, submitted as a defendant seeking to avoid jurisdiction *in New York*, controverted Lively's allegations about the Wallace Parties' alleged conduct and work being directed *at New York*. Wallace's statements concerning the focal point and direction of *his work*—including monitoring social media for California clients—says nothing about and is irrelevant to the focal point of *Lively's* tortious conduct and defamatory statements here and where that harm was felt. The *Calder* inquiry concerns only the latter.

Lively's demand for rigid application of *Calder*'s "sources" prong is likewise misplaced and inconsistent with this Court's decisions. Lively is not a journalist; she is a first-person accuser whose allegations rest on

her own claimed experience. The sources prong has no logical application to a defendant who makes first-hand accusations against Texas residents based on her own alleged personal knowledge and experiences.[1] And even if *Calder* were applied as rigidly as Lively argues, the CRD and Draft Complaints identify *the Wallace Parties' Texas operations* as the source of the alleged wrongdoing. In other words, the "source" of Lively's false and defamatory statements was the alleged Texas conduct. The district court's reliance on the sources prong, ROA.4457, cannot be supported legally or factually.

Under the correct application of *Calder*, Lively's Texas-directed conduct supports specific personal jurisdiction. Her false and defamatory statements about the Wallace Parties in the CRD and Draft Complaints alone concerned—and expressly focused on—alleged *Texas* activities of a

---

[1] Lively purports to distinguish this Court's decisions in *Defense Distributed v. Grewal*, 971 F.3d 485, 495-96 (5th Cir. 2020) and *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 216 (5th Cir. 2025). Lively.Br.36. But both confirm that forum-directed content giving rise to intentional-tort claims can establish jurisdiction without rigid application of the sources prong. Lively's attempt to distinguish *Grewal* as involving only "purposeful-availment principles" also fails because the Court expressly invoked both *Calde*r and *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999). *See Grewal*, 971 F.3d at 496 ("[T]he principles discussed in *Wien Air Alaska* and *Calder* (and reaffirmed in *Walden*) control.").

*Texas* resident and *Texas* business. Lively knew the Wallace Parties were located in Texas and that publishing and disseminating her defamatory statements would (and did) harm them in *Texas*, which is enough. *See, e.g.*, *Stone v. Shafran*, 641 F. Supp. 3d 1344, 1360 (S.D. Fla. 2022). Lively's Texas-directed conduct in this regard materially differs from that analyzed in the cases she relies on, *see* Lively.Br.33-37, as the Wallace Parties already explained, *see* Wallace.Parties.Br.46-49. Lively made Texas the focal point of her false accusations about the Wallace Parties—not merely biographical background. She then (as explained next) invoked the Texas courts and Texas processes to investigate those accusations, swearing to a Texas court that "a substantial part" of the conduct she sought to investigate occurred in Texas.

*Calder* is "but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum," *Revell*, 317 F.3d at 473, but its effects test is satisfied here and confirms that Lively's Texas-directed conduct supports specific personal jurisdiction. Under *Calder* or otherwise, and especially taking the CRD and Draft Complaints together with all other Texas contacts, there are "minimum contacts" here.

***Second***, Lively's Rule 202 petition and related Texas contacts, to investigate her *Texas-directed false statements in the CRD and Draft Complaints*, further shows purposeful availment of the Texas forum. Lively does not—and cannot—deny that she filed a verified petition in Texas. ROA.1785-86, 3503-17. She does not deny swearing that "a substantial part of the events giving rise to the claims that [she sought] to investigate occurred in Hays County, [Texas]." ROA.3511. Nor does she deny retaining Texas lawyers, paying filing fees to the Hays County clerk, or contracting with Texas process servers who made *seven service attempts* at Wallace's Texas home. ROA.1785-86, 3503-17, 3382-83, 3385, 3511.

Lively responds that a Rule 202 petition is not an "original action" and, under *PaineWebber* and *Halliburton*, she did not litigate extensively on the merits. Lively.Br.38-40. The Wallace Parties have addressed both arguments (Wallace.Parties.Br.30-31), and Lively still does not address the district court's failure to consider these Texas-lawsuit contacts in the aggregate minimum-contacts analysis. *See also supra* Part I.A.1.

Further, Lively's "actually participated" response tries to fit a square peg into a round hole. Lively.Br.40. The cases on which she (and

the district court) rely involved non-resident defendants' mere *reactive* participation in litigation—while continuously objecting to personal jurisdiction—without ever initiating any legal action in the forum state. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453, 460-61 (5th Cir. 2001); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540-41 (5th Cir. 2019).

Lively, by contrast, did the opposite. She affirmatively invoked a Texas court and Texas processes to investigate the same Texas-directed, false claims she had published. In doing so, she swore to the Texas court that a substantial part of the conduct made the subject of her false and defamatory claims occurred in Texas. She then voluntarily hired Texas counsel, paid filing fees to the Texas court, and retained Texas process servers to make numerous service attempts on the Wallace Parties at Wallace's private Texas residence. Even if the *extent* of her participation differs from the other cases, the fact that Lively's participation was *self-initiated and self-directed at Texas* readily distinguishes the cases. And

the notion that Lively nonsuited her Texas case "before Wallace was served," Lively.Br.39, falls flat given the *extensive* service attempts.[2]

Lively invokes *Allred v. Moore & Peterson* for the proposition that "[f]iling fees and process servers do not transform a pre-suit discovery tool into an original action or otherwise support jurisdiction." Lively.Br.39. But *Allred* does not support the categorical rule Lively proposes. *See* 117 F.3d at 287. Rather, it confirms that Lively's Texas-lawsuit contacts must be considered as part of the aggregate minimum-contacts analysis—not confined to an isolated inspection under the distinguishable *PaineWebber* and *Halliburton* decisions. In *Allred*, this Court held simply that "where process is issued in a Louisiana lawsuit

[2] Lively's participation and conduct in *this* litigation also materially differs from that of the defendants in *PaineWebber* and *Halliburton*. Rather than continuously objecting to the district court's personal jurisdiction, Lively has affirmatively sought post-dismissal, so-called "substantive" relief *from the district court here* under California law while this appeal is pending. *See Wallace v. Lively*, No. 1:25-CV-00163-DAE (W.D. Tex.), Dkt. 45 (Lively's Motion for Costs and Attorneys' Fees) (requesting "substantive" relief under California law—Cal. Civ. Code § 47.1—without expressly asserting an objection to the district court's personal jurisdiction or otherwise conditioning her request for substantive relief), Dkt. 54 at 5-6, n.1 (Lively's Reply in Support of her Motion for Costs and Fees) (confirming her position that "Section 47.1 is plainly a substantive fee-shifting provision"). *See In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019) (Court may take judicial notice of court proceedings as matters of public record).

and is properly served in Mississippi on a Mississippi resident by mailing from outside of Mississippi, such service—*absent any other Mississippi nexus*—provides insufficient contact" for a Mississippi court to exercise jurisdiction "over non-residents served outside of Mississippi." *Id.* (emphasis added).

Lively's Texas contacts—including those associated with her Rule 202 petition—supply precisely the Texas nexus absent in *Allred*. Her purposeful invocation of the Texas judicial system and processes demonstrates purposeful availment of Texas law and its procedures, establishing the requisite minimum contacts.

The Wallace Parties' uncontroverted allegations concerning the Texas-lawsuit contacts, among Lively's other Texas-directed activities, should have been accepted as true and considered collectively. *See Huff*, 748 F.2d at 1555. The minimum-contacts threshold is amply met.

***Third***, Lively's in-state republications or ratifications of her false statements were alleged in detail by the Wallace Parties, were not controverted, must be accepted as true, and weigh further in favor of finding minimum contacts. Wallace.Parties.Br.35-39. Lively doubles-down on the district court's heightened standard, claiming the Wallace

Parties "could have sought jurisdictional discovery in this case or submitted affidavits based on knowledge acquired in the SDNY Action." Lively.Br.42 n.7; *accord* Lively.Br.30-31.

That argument turns the *prima facie* standard on its head. *See also supra* Part I.A.1. At the dismissal stage, a plaintiff need establish only a *prima facie* case of personal jurisdiction to satisfy its burden. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). And where, as here, the district court rules without an evidentiary hearing, it must accept the plaintiff's uncontroverted allegations as true. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000); *see also FTC v. Educare Ctr. Servs., Inc.*, 414 F. Supp. 3d 960, 977 (W.D. Tex. 2019) ("[T]he allegations challenged by [defendant] are not 'particularly detailed' about [defendant's] actions, but given that they must be accepted as true, nor are they conclusory for jurisdictional purposes.").

This standard does not require evidentiary corroboration, much less from discovery from separate litigation involving different parties and claims—which Lively cites as supporting a need for evidentiary support

here.[3] Indeed, the New York litigation involved California employment and retaliation claims by Lively against numerous parties—not the defamation claims the Wallace Parties assert here. ROA.2985-3125. And the Wallace Parties' discovery there was focused on other issues, before their motion to dismiss was granted a second time. The district court's reliance on discovery in separate litigation, from which the Wallace Parties were dismissed, to heighten their *prima facie* burden was error.

Lively also argues that the Wallace Parties' allegations concerning Lively's Texas visit to SXSW cannot constitute defamation giving rise to personal jurisdiction. Lively.Br.42. The Wallace Parties do not contend that Lively's silence or failure to retract at SXSW is a standalone tort. Rather, her alleged conduct at SXSW—and in Austin and Waco—provide evidence of purposeful, forum-directed activity and bear on the truth or falsity of her statements in the CRD and Draft Complaints and her fault in making them. ROA.1787; *cf. Diplomat Elec., Inc. v. Westinghouse Elec.*

---

[3] Importantly, the SDNY district court presiding over the New York litigation entered a protective order providing that information designated under that order may be used "solely for the prosecution and defense of [the New York] action and any appeals thereto." *See Lively v. Wayfarer Studios LL*C, No. 1:24-cv-10049-LJL (S.D.N.Y.) (Protective Order, Dkt. 125 at 6).

*Supply Co.*, 430 F.2d 38, 47 (5th Cir. 1970) ("Where a person has published a false statement and information thereafter comes to him from a reliable source which would put a reasonable person on inquiry as to the truth of such statement, and instead of making such inquiry he willfully republishes the false statement, the repetition of the defamation is strong evidence of malice."); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987) ("Refusal to retract an exposed error tends to support a finding of actual malice.").

Lively contends that these alleged statements must be disregarded because they post-date the filing of this lawsuit. Even assuming this temporal principle applies with full force in the specific-personal-jurisdiction or defamation contexts—and the cases Lively cites do not clearly establish that—the argument changes nothing.[4] Lively's pre-

[4] *See, e.g.*, *Praetorian Specialty Ins. Co. v. Auguillard Constr. Co.*, 829 F. Supp. 2d 456, 467-68 (W.D. La. 2010) ("The Fifth Circuit has found that when a court is determining whether or not there is '*general jurisdiction*,' the court should evaluate the defendant's contacts with the forum state 'over a reasonable number of years, *up to the date the suit was filed*.'... However, the court is not aware of a case in which the Supreme Court or the Fifth Circuit has specifically imposed this same temporal limit on the concept of specific jurisdiction.") (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008), and *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990)).

filing, Texas-directed activities and availment of the forum establish sufficient contacts. Lively's subsequent Texas visits merely reinforce the propriety of jurisdiction and is not the sole basis. The Wallace Parties' detailed and uncontroverted allegations concerning Lively's in-state visits should have been accepted as true and considered with her other contacts.

*

The Wallace Parties' allegations are each powerful in establishing a Texas connection. Taking all the allegations in totality, there was far more than "minimum contacts" to prove specific personal jurisdiction.

**B. Lively's relatedness contentions lack merit.**

In denying that the Wallace Parties' claims arise out of or relate to Lively's Texas contacts, Lively skips over how directly connected the claims are to the CRD and Draft Complaint allegations and how closely tied those allegations are to Texas; mostly ignores the "relate to" portion of the test; and otherwise repeats the same faulty but-for causation standard argument she urged below—that "[i]f Ms. Lively had never filed the Rule 202 petition, the Wallace Parties' defamation claims would be identical." Lively.Br.44-45. None of this is persuasive.

For starters, Lively's attempt to downplay the relatedness of the Rule 202 petition and related Texas-lawsuit contacts is baseless. Lively.Br.44. Those Texas-directed activities and other contacts were undisputedly *to investigate the CRD and Draft Complaint allegations that form the basis of the Wallace Parties' claims*. And those allegations are plainly tied to Texas. *See supra* Part I.A.1.

Beyond that, Lively's but-for causation argument is legally flawed. The Supreme Court has disposed of this argument, confirming the "arise out of or relate to" prong requires a "connection between plaintiff's suit and a defendant's activities" rather than a "strict causal relationship." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361-62 (2021); *see* Wallace.Parties.Br.49-51. The "relate to" term strongly confirms that broader standard.

This controlling standard is plainly met here. The Wallace Parties' claims challenge Lively's publication of the CRD and Draft Complaints—documents that targeted the Texas forum by identifying the Wallace Parties as Texas-based and describing their alleged conduct as occurring in and from Texas—and their dissemination to media, including Texas media, with knowledge that the Wallace Parties would suffer harm in

Texas. And in Lively's Texas filing and pursuit of her Rule 202 petition, she sought to investigate the very conduct she falsely accused the Wallace Parties of in the CRD and Draft Complaints. Her in-state visits likewise involved the alleged republication or ratification of those accusations.

The Wallace Parties' defamation claims therefore arise out of or relate to Lively's various Texas contacts such that "some relationship" exists to support jurisdiction. *See Hardy v. Scandinavian Airlines Sys.*, 117 F.4th 252, 266-67 (5th Cir. 2024) (district court erred by narrowly focusing on single contact that plaintiff's claim arose out of instead of reviewing defendant's contacts related to claim as "pieces of a whole"); *Bibbs v. Molson Coors Beverage Co. USA*, 616 F. Supp. 3d 606, 614 (N.D. Tex. 2022) ("Essentially, [defendant] argues that [plaintiff's] claim would be the same if the trailer was bound for any of its five other [non-Texas] breweries.... But the Supreme Court in *Ford* rejected this exact line of reasoning."). This prong offers no basis for dismissal.

### C. Exercising jurisdiction here is fair and reasonable, and Lively forfeited any argument to the contrary.

Lively argues for the first time on appeal that exercising personal jurisdiction would be unfair and unreasonable. She admits she offered no objection or argument about this prong below. Lively.Br.46. She thus

forfeited the issue. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Lively's claim that waiver principles do not apply on this issue is unsupported by the authority she cites, Lively.Br.46, and is wrong, *see, e.g.*, *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1314 n.16 (10th Cir. 2024).

Even if preserved, Lively cannot carry her heavy burden to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Texas has a substantial interest in providing a forum for its residents to seek redress for defamation directed at them in their home state—particularly where an out-of-state defendant invokes the Texas courts and judicial process relating to those defamatory statements, and then engages in in-state repetitions. *See supra* Parts I.A–B. The Wallace Parties likewise have a significant interest in obtaining convenient and effective relief in the forum where their harm was most keenly felt.

Lively's claim that litigating in Texas would be unreasonably burdensome is belied by her own conduct. A defendant who affirmatively invoked the Texas courts and judicial processes, hired Texas counsel, paid filing fees to a Texas court, swore under oath to a Texas judge that

"a substantial part of the events" occurred in Texas, and then traveled to the forum for public appearances can hardly claim she would be unduly burdened by litigating there.

Lively's remaining fairness arguments fare no better. Her contention that the Wallace Parties' interest in convenient relief "are not uniquely served by a Texas forum" because they litigated in New York ignores that they were involuntarily haled into the New York litigation, objected to the court's jurisdiction over them, and were dismissed for lack of personal jurisdiction there. And her assertion that Texas litigation would "waste judicial resources and risk inconsistent outcomes" is unfounded. The "parallel suits" Lively references involved different parties and different claims, and were either dismissed in the early stages or settled; indeed, only this Texas litigation involves the Wallace Parties' defamation claims against Lively.

Exercising jurisdiction is fair and reasonable, and Lively has not come close to—indeed, has forfeited—the "compelling case" required to show otherwise.

## II. Venue is proper in the Western District of Texas because a substantial part of the events occurred there.

Perhaps recognizing the weakness of Judge Ezra's jurisdictional analysis, Lively raises not only her brand-new "fairness" argument that she never raised below (addressed *supra*, Part I.C), but also a venue contest on which the district court also did *not* grant summary judgment. Lively.Br.46-51. While this Court can affirm on any ground supported by the record, it is a court of review rather than first-view.

Regardless, if the Court reaches the issue, the alternative venue argument easily fails on the merits: venue is proper in the Western District of Texas because a substantial part of the events giving rise to the Wallace Parties' claims occurred there, including the harm the Wallace Parties suffered, Lively's Texas-directed publication, and her alleged in-state repetition or ratification of the defamatory statements.

Like uncontroverted jurisdictional facts, the Court must accept as true all allegations in the complaint and resolve all conflicts in the plaintiff's favor on a motion to dismiss for improper venue. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam). Under the general venue statute, a civil action may be brought, among other places, in "a judicial district in which a substantial part of

the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "In a defamation case, the Court may consider the venue of where the defamation occurred and the venue of where the harm was felt to determine the location of 'a substantial part of the events' under 1391(b)(2)." *Hawbecker v. Hill*, 88 F. Supp. 3d 723, 731 (W.D. Tex. 2015).

Here, both the harm to the Wallace Parties and the publication—including distribution and repetition or ratification—occurred in the Western District. In defamation cases, the place where plaintiffs feel their injury is highly relevant to venue and may constitute a substantial part of the events giving rise to their claims. *Id.* ("[A] substantial part of the events giving rise to [plaintiff's] claim is the injury to his reputation in San Antonio, Texas.... [C]onsidering the effect of the alleged defamation was intended to be felt in San Antonio, the San Antonio Division of the Western District of Texas is a proper venue.").

There can be no serious dispute that the harms resulting from Lively's defamatory statements were—and continue to be—most keenly felt by the Wallace Parties in the Western District of Texas. Wallace has been a citizen of Texas since 2021 and resides within this district, and Street's principal place of business has similarly been in Texas since

2021. The significance of the Wallace Parties' residence and business presence in this district is clear: it's where individuals exposed to the defamatory statements are most likely to know or interact with the Wallace Parties, in turn amplifying the reputational impact and harm caused by the defamatory statements. Lively does not dispute these facts; she simply ignores the governing standard and dismisses the Wallace Parties' harm in a single conclusory sentence. Lively.Br.51.

Concerning publication and the location of the defamatory conduct, the Wallace Parties alleged that Lively's out-of-court publication of the CRD and Draft Complaint were "directly published by her to the press" or that "she could reasonably foresee that they would be republished," and these publications were specifically directed to Texas. ROA.1801. They further alleged Lively "made additional repeated defamatory comments in Texas." *Id.* Thus, the substantial events include not only the CRD and Draft Complaints, but also Lively's out-of-court publication of those documents to a media organization with the largest digital audience in the United States (if not the world), the resulting Texas dissemination, and her alleged repetition or ratification while physically

in Texas—and specifically, the Western District. Lively again fails to dispute or controvert these allegations.

Finally, in connection with her Rule 202 petition, Lively *swore* under penalty of perjury to a Texas court that venue was proper in Hays County, Texas—a county in the Western District—"because a substantial part of the underlying events that would give rise to the claims being investigated occurred in Hays County." ROA.1794, 3511. That sworn admission further supports the conclusion that a substantial part of the events giving rise to the controversy occurred in the Western District. It also bears on the truth or falsity of Lively's statements in the CRD and Draft Complaints and her fault in making them.

Venue is proper in the Western District of Texas. Lively's alternative ground for affirmance fails.

## CONCLUSION

For all the reasons advanced above and in the Wallace Parties' opening brief, the Wallace Parties respectfully ask the Court to reverse the district court's order and judgment dismissing their claims for lack of personal jurisdiction, reject or remand Lively's alternative argument that

venue is improper in the Western District of Texas, and remand for further proceedings.

Respectfully submitted,

/s/ *Charles L. Babcock*

Charles Lynde Babcock
Joel Robert Glover
JACKSON WALKER LLP
1401 McKinney Street
Houston, Texas 77010
(713) 752-4200
(713) 308-4110 (fax)
cbabcock@jw.com

Jeffrey L. Oldham
JACKSON WALKER LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (fax)

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that this reply brief was filed with this Court via the Court's CM/ECF system on September 4, 2026, and that an electronic copy of it was served on counsel of record, as listed below, via the Court's CM/ECF system on the same date:


Michael J. Gottlieb
mgottlieb@willkie.com
Kristin Bender
kbender@willkie.com
Aaron E. Nathan
anathan@willkie.com
WILLKIE FARR & GALLAGHER LLP
1875 K Street
Washington, D.C. 20006
(202) 303-1245

Laura Lee Prather
laura.prather@haynesboone.com
Catherine L. Robb
catherine.robb@haynesboone.com
Michael J. Lambert
michael.lambert@haynesboone.com
Reid Pillifant
reid.pillifant@haynesboone.com
HAYNES AND BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
(512) 867-8400
(512) 867-8470 (fax)

Esra A. Hudson
ehudson@manatt.com
Stephanie A. Roeser
sroeser@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000


*Counsel for Defendant-Appellee*

/s/ *Charles L. Babcock*
Charles Lynde Babcock

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(A)(7)(B) because it consists of 6,494 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32.2.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft 365 Century Schoolbook in 14-point font.

/s/ *Charles L. Babcock*
Charles Lynde Babcock